UNITED STATES of America,
Plaintiff-Appellee,

v.

John SHADDIX, Defendant-Appellant.

No. 81–2461.

United States Court of Appeals,
Fifth Circuit.

Dec. 7, 1982.

Tom Upchurch, Jr., & Assoc., Buddy Wright, Mike Moore, Amarillo, Tex., for defendant-appellant.

John M. Potter, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, JOHNSON and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

## I. *Introduction*

This is an appeal from a conviction on four counts of aiding and abetting the transportation of illegal aliens in violation of 8 U.S.C.A. § 1324(a)(2) (West Supp. 1982),[1] and for conspiring to transport illegal aliens in violation of 18 U.S.C. § 371 (1976). Shaddix, appellant and defendant below, challenges the sufficiency of the evidence to support his conviction on several grounds. Because we conclude that there was sufficient evidence to support the jury verdict, we affirm.

## II. *Facts and Disposition Below*

Defendant operates a plant in South Texas for the processing of rattlesnake hides. On July 11, 1981, defendant called Henry Leal, an investigator for the local County

---

1. Section 1324(a)(2) provides:

   § 1324. Bringing in and harboring certain aliens—Persons liable

   (a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—...

   (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law; ...

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That [sic] for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

Attorney's office, to inquire about the availability of help for his plant. Leal testified that defendant asked him whether he knew of any "wets" or "Mexicans" looking for work. Defendant claimed at trial that he was only looking for workers, and not for any illegal aliens. In any event, Leal testified that he replied in the negative, warning the defendant "not to mess with something like that." Later that day, while defendant was driving through the countryside about sixty miles from the Mexican border with a certain Gonzales, they spotted three Hispanic looking individuals carrying cloth sacks and hitchhiking along the road.[2] Gonzales asked the three in Spanish whether they wanted to work, to which they replied in the affirmative. Defendant apparently does not speak, or has little understanding of, the Spanish language. In the course of his conversation with the aliens, Gonzales from time to time spoke to defendant in English. Gonzales did not ask the aliens whether they were in this country legally. He offered them each a job, and told them to wait in the brush until night time, when they would be picked up by another person who would signal his arrival by honking his car horn twice. After dark, defendant and the other individual, who turned out to be Burnett, one of his employees, arrived in separate cars. After honking and spotting the aliens, defendant got out of his vehicle, opened the door to Burnett's car, and motioned the aliens to enter, which they did. The cars traveled together for some distance, and then parted. After traveling approximately thirty miles, the aliens and Burnett were stopped and apprehended by the Border Patrol. Defendant called Leal the following morning to ask whether Burnett had been arrested by immigration agents.

The government tried the case to a jury. Shaddix claimed in his defense that he was only looking for workers, and did not know that the hitchhikers were in the country illegally, or that they had entered the country within the last three years. Following

presentation of the evidence, the jury convicted Shaddix on one count of conspiring to transport illegal aliens, and three counts of aiding and abetting the transportation of illegal aliens. The district court sentenced him to three years unsupervised probation and a $3,000 fine on the conspiracy count, and three years unsupervised probation on the remaining three counts, to run concurrently with the punishment assessed on the conspiracy count.

On appeal, defendant claims that the wholly circumstantial evidence adduced at trial was insufficient to convict him of either the conspiracy or the transportation counts, and that the trial court committed reversible error by refusing to grant defendant's motion for acquittal. We will analyze the transportation and the conspiracy charges separately.

III. *Discussion*

■ We begin by laying down the rules governing an appeal alleging insufficiency of evidence. In reviewing the sufficiency of the evidence, we must review all evidence, whether direct or circumstantial, in the light most favorable to the government, and must accept all reasonable inferences and credibility choices that tend to support the jury's verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Magana-Arevalo,* 639 F.2d 226, 228 (5th Cir.1981). The standard of review is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547, 549 & n. 3 (5th Cir.1982) (en banc); *see also United States v. Alonzo,* 681 F.2d 997, 1002 (5th Cir.1982); *United States v. Sudderth,* 681 F.2d 990, 994 (5th Cir.1982).

A. *The Transportation Charge*

■ To support a conviction under section 1324(a)(2), the government must prove the following five elements: (1) defendant transported an alien within the United

2. The hitchhikers were subsequently found to be illegal aliens who had recently entered this

country by wading across the Rio Grande.

States, (2) the alien was in the United States in violation of law, (3) this was known to the defendant, (4) defendant knew or had reasonable grounds to believe that the alien's last entry into the United States was within the last three years, and (5) defendant acted willfully in furtherance of the alien's violation of the law. *United States v. Gonzalez-Hernandez*, 534 F.2d 1353, 1354 (9th Cir.1976); 2 C. Gordon & H. Rosenfield, Immigration Law and Procedure § 9.23d, at 9–56 (1982 Supp.). That the alien's ultimate purpose, to find work, was a lawful one does not provide a defense to one whose guilt has been established under the foregoing five elements. *Gonzalez-Hernandez*, 534 F.2d at 1354.

Defendant first contends that the evidence was insufficient because there is no showing that he knew that the hitchhikers were illegal aliens, or that they had entered the country within the last three years. While the evidence in this regard is wholly circumstantial, we nevertheless conclude that it was sufficient to support the jury's verdict. "Because no one has a window to a man's mind, knowledge must often be proved by indirect evidence." *United States v. Richards*, 638 F.2d 765, 769 (5th Cir.), *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981).

The evidence shows that on the morning of July 11, 1981, defendant called Leal and asked him if he knew of any "Mexicans" or "wets," and that Leal warned defendant not to "fool" with such matters. Later that day, defendant, who was apparently still looking for workers, went driving through the countryside. Gonzales, who was in the car with defendant, offered work to three Hispanic individuals they saw walking along the highway sixty miles from the border, carrying cloth sacks. Gonzales told the aliens to hide in the brush, and that they would be picked up at night by another person who would honk his car horn twice. Gonzales and defendant were conversing with each other in English at the same time. Whether he understood the conversation between Gonzales and the aliens or not, defendant later told Burnett that he had found workers who were waiting to be picked up at night. Defendant in fact returned at night with Burnett to pick up the aliens, opened the door to Burnett's car and motioned the aliens to enter. Finally, defendant called Leal the next morning to ask whether he knew if Burnett had been arrested by the Border Patrol. Defendant has not offered any reasonable explanation for his conduct nor can we think of any. The jury was certainly entitled to believe Leal's testimony that defendant called him to ask if he knew of any "wets" looking for work. The jury was also within its rights in inferring from (1) the extraordinary precautions defendant took to pick up the aliens unobserved at night, (2) defendant's otherwise inexplicable fear that Burnett had been arrested by the Border Patrol, and (3) the cloth sacks carried by the aliens and the fact that they spoke no English that defendant knew that the people he was transporting were in this country illegally, and knew, or had reasonable grounds to believe, that they had entered within the last three years. "For us to hold that this does not constitute evidence of knowledge on [defendant's] part would be to deny the right of a jury to apply their common sense and understanding of ordinary human behavior to the decision of cases brought before them." *United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1072 (5th Cir.1982).

The element requiring that the transportation of the illegal aliens be "in furtherance of the alien's violation of the law" requires a somewhat different analysis. The transportation section was a new provision in the 1952 legislation overhauling the immigration laws. The legislative history of § 1324(a)(2) does not reveal the extent of the "in furtherance of" qualification in the statute. The legislation incorporating this section was introduced in both houses as an amendment to the bills considered, and passed without debate. 98 Cong.Record 4400 (1952) (amendment introduced and approved in the House); 98 Cong.Record 5756 (1952) (amendment introduced and approved in the Senate). *Cf.* 98 Cong.Record 5319–20 (1952) (Debate in Senate regarding the prior section 274). The amendment tracked identical language in earlier legislation, Act of March 20, 1952, ch. 108, 66 Stat. 26, *repealed by* Immigration and Nationali-

ty Act of 1952, ch. 477, § 403(a)(13), 66 Stat. 163, 279. The debates surrounding the latter bill reveal that its sponsors clearly intended that the "in furtherance of" qualification be one of the burdens of proof imposed on the government. 98 Cong.Record 1351 (1952) (statement of Mr. Graham).

In *United States v. Moreno,* 561 F.2d 1321, 1323 (9th Cir.1977), the Ninth Circuit held that "there must be a direct or substantial relationship between [the] transportation and its furtherance of the alien's presence in the United States." *Moreno* involved the transportation of illegal aliens by a foreman who was required to transport them in the course of his employment. Thus, the court concluded that "his transportation of aliens was only incidentally connected to the furtherance of the violation of the law, if at all." 561 F.2d at 1322. The court noted that the foreman's employer was not charged with any offense in this matter. *Id.* at n. 4. The court concluded:

> A broader interpretation of the transportation section would render the qualification placed there by Congress a nullity. To do this would potentially have tragic consequences for many American citizens who come into daily contact with undocumented aliens and who, with no evil or criminal intent, intermingle with them socially or otherwise. It could only exacerbate the plight of these aliens and, without adding anything significant to solving the problem, create, in effect judicially, a new crime and a new class of criminals.

561 F.2d at 1323.

■ It is not necessary to follow the Ninth Circuit in disposing of the present case because this case presents facts that clearly indicate that defendant's acts were in furtherance of the aliens' violation of the law. Although defendant employer was not implicated in the aliens' illegal entry into this country, his offer of employment to and voluntary transportation of aliens whom the jury concluded he knew had entered the country illegally within the last

three years sufficiently furthered their illegal presence in this country to constitute a violation of section 1324(a)(2).[3]

### B. *The Conspiracy Claim*

■ Defendant next claims that there was insufficient evidence regarding the existence of a conspiracy and his participation in it. This issue is controlled by our decision in *United States v. Malatesta,* 590 F.2d 1379 (5th Cir.) (en banc), *cert. denied,* 444 U.S. 846, 100 S.Ct. 91, 62 L.Ed.2d 59 (1979). "In order to convict a defendant of a conspiracy, the existence of a conspiracy must be established with substantial evidence showing the presence of an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement by one of the conspirators, *United States v. White,* 569 F.2d 263 (5th Cir. 1978), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1979), and with substantial evidence showing that each conspirator knew of, intended to join and participated in the conspiracy. *United States v. Malatesta, supra.*" *United States v. Areddondo-Morales,* 624 F.2d 681, 683 (5th Cir. 1980).

■ In dealing with the knowledge requirement for conspiracy to commit a substantive offense, the Supreme Court has instructed us that "[c]onspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 1319, 3 L.Ed.2d 1503 (1959) (emphasis in original) (quoting Developments in the Law-Criminal Conspiracy, 72 Harv.L.Rev. 920, 939 (1959)). Thus, it is clear that in the present case, in order to prove a conspiracy to transport illegal aliens, the government would normally have to prove knowledge by the defendant that the aliens were in the country illegally, and knowledge or the existence of reasonable grounds to believe that the aliens entered the country within the last three years. Since we have already concluded that the government has successfully estab-

---

**3.** Thus, the exemption provided to employers charged with harboring of aliens under § 1324(a)(3) is inapplicable here.

lished violation by the defendant of the substantive offense, we conclude that it has necessarily fulfilled the knowledge requirement of the conspiracy claim. We need therefore only determine whether the evidence establishing the essential elements of an agreement and defendant's intent and participation in it is sufficient.

Defendant was present during the conversation between Gonzales and the aliens, in which Gonzales arranged to pick them up from their hiding place in the brush later that night. Whether or not he had sufficient understanding of Spanish to follow this conversation, defendant later told Burnett of the probable presence of the aliens in the brush and that "that was the deal," and drove with him to pick them up. He then opened the door to Burnett's car, and motioned them to enter. We conclude that the evidence was sufficient to support a conviction of conspiracy.

IV. *Conclusion*

For the reasons mentioned above, each of the convictions is AFFIRMED.