**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Leonel PEREIRA–PINEDA, a/k/a
Jose Luis Morales-Trevino,
Defendant-Appellant.**

**Nos. 83–2069, 83–2078
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 28, 1983.

Thomas Herter, Houston, Tex., for defendant-appellant.

James R. Gough, John M. Potter, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, TATE and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Defendant appeals separate convictions on several counts of transporting undocumented aliens within the United States. In this consolidated appeal, he asserts that because the aliens he was transporting were citizens of El Salvador the aliens had a

right to (and did) apply for political asylum in the United States, and that, thus, the Government could not prove an essential element of its burden of proof, that the aliens were not lawfully entitled to enter or reside within the United States. We affirm the convictions.

Jose Leonel Pereira-Pineda, the defendant, is a Guatemalan national and permanent resident alien in this country. On August 29 and November 22, 1982, he was caught and arrested for transporting undocumented aliens in his car, knowing that the aliens were in the United States in violation of the law and having reasonable grounds to believe that the aliens had last entered the United States less than three years earlier, a violation of 8 U.S.C. § 1324(a)(2).[1] He was separately indicted for and tried on a total of seven counts of violating § 1324(a)(2). Before both his trials, Pereira stipulated as to the testimony of the aliens which he had been caught transporting.[2]

1. 8 U.S.C. § 1324(a) provides:

§ 1324. **Bringing in and harboring certain aliens—Persons liable**

(a) Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or more, within the United States by means of transportation or otherwise, in furtherance of such violation of law;

(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation; or

(4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of—

any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: *Provided, however,* That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

2. Pereira stipulated to the testimony of the aliens regarding the August 29 incident.

(a) Each of the aliens is a national of El Salvador;

(b) The aliens entered the United States on or about August 21, 1982 through the Republic of Mexico *without assistance from the Defendant;*

(c) At the time of their entry into the United States, the aliens were not duly admitted by an immigration officer and none possessed documents permitting entry;

(d) The aliens were being transported in the United States and within the Southern District of Texas in a car driven by the Defendant JOSE LEONEL PEREIRA–PINEDA on August 29, 1982; that at the time he was transporting the aliens, the Defendant knew that they had not been admitted to the United States by an immigration officer and did not possess documents permitting entry to the United States and had entered this country illegally on or about August 21, 1982 and were in the United States in violation of law;

(e) After their apprehension on August 29, 1982, each of the aliens made application for political asylum in the United States.

His stipulation as to the November 22 incident was substantially the same, except for different relevant dates and for another stipulation obtained at the second trial:

The Court: So your stipulation is that you were taking these people to Houston for purposes of ... what, you were just dropping them off in Houston? You had really no particular interest in what they were going to do once they got there. Is that the case? Is that what you're stipulating to?

The Defendant: Of course, yes.

Although it was not worded expressly as such, it is clear that the stipulation for the November 9 trial, which was adopted virtually unchanged for the second, January 28 trial, was understood by the Court, defendant and Government to mean that the defendant in transporting the aliens had *no intent to aid them in any efforts* to apply for legal status. This is clear from an exchange at the second trial:

The Court: ...

You see, my ruling in the last [November 9] case [denying defendant's motion to dismiss] was based on the proposition that

He was convicted in separate bench trials on November 9, 1982 and January 28, 1983 on five of the seven counts, was sentenced to a total of three years in prison and a subsequent five year period of probation, and filed a timely notice of appeal. His sole point on appeal is that the Trial Judge erred in refusing to grant his pretrial motions to dismiss the indictments.

Pereira re-urges essentially the same arguments before this Court that he put forth in his motions to dismiss. He points out that in order to obtain a conviction for violating § 1324(a)(2), the Government must prove that the transported alien was not "lawfully entitled to enter or remain in the United States under the terms of any law relating to immigration," citing *United States v. Mount Fuji Japanese Steak House, Inc.,* 435 F.Supp. 1194, 1197 (E.D.N.Y.1977). He argues that the aliens he was transporting were from El Salvador and were automatically entitled to seek political asylum, and that they had at all times the right to remain in the United States until they had fully ascertained and explored their right to apply for asylum, citing as support *Orantes-Hernandez v. Smith,* 541 F.Supp. 351 (C.D. Cal.1982), and *Nunez v. Boldin,* 537 F.Supp. 578 (S.D.Tex.), *dism'd* 692 F.2d 755 (1982). Quite simply, in Pereira's view, once here the Salvadorans would have the *right* to remain to pursue their potential asylum applications, and thus the Government could not prove that the aliens were "not lawfully entitled to . . . reside within the United States"—one element of a § 1324(a)(2) violation. *See* note 1, *supra.* In support, he emphasizes the result in *United States v. Zayas-Morales,* 685 F.2d 1272 (11th Cir.

1982). We are not, however, persuaded by Pereira's argument.

We have said before that knowledge is an essential element of a § 1324(a)(2) violation. *See United States v. Madrid,* 510 F.2d 554, 556 (5th Cir.), *reversed on other grounds and remanded,* 517 F.2d 937 (1975), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976). Pereira stipulated that he knew the aliens he was transporting were, in the terms of § 1324(a)(2), "in the United States in violation of the law," and that their "last entry into the United States occurred less than three years prior" to the incidents involved here. *See* notes 1, 2, *supra.* He conceded that they were "not duly admitted by an immigration officer," and that they had not been "lawfully entitled to entered" the United States. If, however, the aliens were "lawfully entitled to . . . *reside* within the United States under the terms of . . . any . . . law relating to the immigration or expulsion of aliens," Pereira could not have violated § 1324(a)(2). We find that the aliens were not so entitled ·and that he did violate the law.

The mere possibility that El Salvadorans may file asylum applications at some point in the future, and thus be allowed to remain at liberty under bond or parole while their right to asylum is determined, does not make them—from the moment they enter this country—entitled to "reside" here for the purposes of § 1324(a)(2). Rejecting a similar argument in a slightly different context, this Court stated,

It would be a misuse of the parole concept to conclude that one who physically

the defense he's raising could be a defense on the right fact situation. In other words, if a person is bringing people into this country for the idea of rescuing them from oppression, for the purpose of driving them to the nearest immigration officer to turn themselves in for asylum, I think that is a defense.
I was convinced at the time that that was not what he was pleading. He was simply saying that because they themselves are eligible for asylum, that that gives him carte blanche to transport them, which I think is not right.

. . . . .

[Defendant's counsel]: We made the same motion [to dismiss] [in the January 28 case] as we made in the last case, your Honor, and you denied it. It's the first part of it. Part "d" of the stipulation, I think, certainly covers the intent element sufficiently . . . .

. . . . .

I think that we can stipulate, and I think the proof at trial would show, your Honor, that the defendant's intent was not to immediately transport these people to an immigration officer.

transports into the United States persons not otherwise entitled to come in cannot be guilty under § 1324(a)(4) if the United States grants parole to those brought in while it determines whether they should be given asylum.

*United States v. Hanna,* 639 F.2d 192, 196 (5th Cir.1980); *contra United States v. Kavazanjian,* 623 F.2d 730, 739 (1st Cir.1980). It would be no less of a misuse here, where Pereira was fully aware that the aliens he was transporting had not been admitted to this country by an immigration officer and did not possess proper entry documents. Further, there is no contention that the illicit transportation was in any way intended to facilitate efforts by the Salvadorans to file applications for asylum; Pereira stipulated to that fact. *See note 2, supra; cf. United States v. Zayas-Morales,* 685 F.2d 1272, 1277–78 (11th Cir.1982) (the general criminal intent necessary for a § 1324(a)(1) violation was not present where defendants presented aliens to the proper officials *specifically* so that aliens could seek legal status). We do not agree that every El Salvadoran has an absolute right to "reside" within the United States from the moment, and no matter in what manner, he arrives. As our Ninth Circuit colleagues opined under similar circumstances:

> If we were to agree with the petitioner's contention that no person should be returned to El Salvador because of the reported anarchy present there now, it would permit the whole population, if they could enter this country some way, to stay here indefinitely.

*Martinez-Romero v. Immigration and Naturalization Service,* 692 F.2d 595, 595–96 (9th Cir.1982).

AFFIRMED.