**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Stacey Lynn MERKT,
Defendant-Appellant.**

No. 84–2401.

United States Court of Appeals,
Fifth Circuit.

June 18, 1985.

Rehearing and Rehearing En Banc
Denied Aug. 22, 1985.

**268**

Dennis P. Riordan, Karen Leigh Snell, Morrison & Foerster, San Francisco, Cal., for defendant-appellant.

Kramer & Hall, San Francisco, Cal., for amicus curiae Mother Jones.

Daniel K. Hedges, Sp. Asst. U.S. Atty., Susan L. Yarbrough, James R. Gough, Michael K. Suarez, Asst. U.S. Attys., Houston Tex., for plaintiff-appellee.

Lawrence A. Gibbs, Sandra Ortiz, San Francisco, Cal., for defendant-appellant's amicus-Nat. Council of Churches, et al.

Karen Parker, San Francisco, Cal., for Federational Internationale & Human Rights.

Kathleen J. Purcell, San Francisco, Cal., for amicus-Unitarian Universalist Ass'n.

Michael J. Heilman, Atty., I.N.S., Washington, D.C., for plaintiff-appellee U.S.A.

Before RUBIN, WILLIAMS, and DAVIS, Circuit Judges.

PER CURIAM:

A jury instruction that an accused charged with transporting illegal aliens should be found guilty if she had the intention of taking the aliens to an immigration office and knew that the Immigration Service had a closer office to which the aliens might report misstates the elements of the offense.

A jury found Stacey Lynn Merkt guilty of conspiring to transport and move, and transporting and moving, two illegal aliens within the United States in violation of 18 U.S.C. §§ 2, 371 and 8 U.S.C. § 1324(a)(2). On appeal, Merkt contends that her conviction was based on improper jury instructions regarding the intent elements of the crimes charged, improper jury instructions regarding the legal status of the aliens transported, and improperly admitted evidence, including hearsay testimony regarding statements coerced from the aliens and evidence obtained as a result of an illegal stop and search by Border Patrol agents. Because the district court improperly charged the jury on the issue of whether Merkt intended to transport the illegal aliens "in furtherance of" their violation of the law, we reverse her conviction and remand to the district court for a new trial. With respect to the other issues raised on appeal, all likely to be raised again in a new trial, we affirm the district court's rulings.

I.

Stacey Merkt worked at the Casa Oscar Romero in San Benito, Texas. The Casa, which is supported by the Diocese of Brownsville and other church groups in the Rio Grande Valley, offers food and housing to Central American refugees regardless of the manner in which they entered the United States. Merkt taught English, helped refugees to communicate with their families, and ran errands.

In February, 1984, Merkt drove Brenda Elizabeth Sanchez-Galan and Mauricio Valle, two illegal aliens from El Salvador, in her car from the Casa to a farmhouse near McAllen, Texas so that they could meet with a newspaper reporter. Merkt

testified that she had agreed to act as an interpreter for the interview. She also testified that the aliens planned to leave for San Antonio, Texas, with the reporter after the interview in a different car driven by a nun who worked in the Casa, Sister Diane Muhlenkamp. When the interview was not completed after several hours, however, Merkt testified that she agreed to accompany the others to San Antonio.

Although there was evidence from which a jury might have inferred that the aliens did not plan to report to an Immigration and Naturalization Service (INS) office, Merkt testified that Sanchez-Galan and Valle wanted to go to San Antonio in order to file claims for political asylum at the district office of the INS located in that city. San Antonio is approximately 230 miles from the Casa. The INS also has a district office in Harlingen, Texas, located only ten miles from the Casa. Two attorneys who specialize in immigration law testified, however, that in Harlingen, a person from El Salvador who filed an asylum claim would be arrested, issued an order to show cause that initiated deportation proceedings, and often placed under a bond that could not be obtained, and, therefore, would be detained in custody. Both attorneys testified that, in contrast, at the San Antonio office, an alien from El Salvador seeking political asylum would be given a receipt, scheduled for an interview, and released. The alien would not be classified as a deportable alien, arrested, detained, or put under bond unless he had been involved in drugs or other serious criminal activity. Only if the San Antonio district director rejected the alien's application would an order to show cause for a deportation hearing be issued, at which time the alien's asylum claim could be renewed before an immigration judge. Merkt's defense included evidence that, because both Sanchez-Galan and Valle were aware of the discrepancy in treatment between the two offices, they decided that they should seek asylum in San Antonio.

The car left the farmhouse at 3:00 a.m. heading north on Highway 649, the only thoroughfare out of the Valley that does not have an INS checkpoint. The district court found that Highway 649 is frequently used to transport illegal aliens into this country. Independent of this finding, there is evidence in the record indicating that Merkt and Sister Muhlenkamp specifically selected this route because it is a secluded backroad and, by using it, they hoped to avoid Border Patrol agents.

Despite these efforts, Border Patrol agents observed the car proceeding north on Highway 649. The agents noted that the license plates on the car indicated that it was not from the immediate area and that the five people in the car did not appear to be either a family or a group of oil workers travelling to work such as riggers, the type of worker in this area who usually worked unusual hours. When the agents stopped the car, they noticed that all of the occupants appeared to be nervous, and that Merkt was talking and gesturing to the others. After an identification check, the agents determined that both Sanchez-Galan and Valle were illegal aliens.

The agents advised Merkt, Muhlenkamp, and the reporter of their *Miranda*[1] rights in English, and repeated the warning to the aliens in Spanish. The agents then transported all five occupants of the car to the Border Patrol station in Rio Grande City. Upon arrival at the station, the agents separated the aliens from the others, and, after again giving *Miranda* warnings, questioned Sanchez-Galan and Valle about their nationality. Although there is conflicting testimony as to whether the aliens asked to consult with an attorney before answering any questions, it is uncontroverted that the agents prevented attorneys from seeing the aliens while the agents interrogated them.

A jury convicted Merkt, and the court sentenced her to ninety days in custody. The court suspended execution of her sen-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

tence, however, and placed her on supervised probation for two years.

## II.

■ To establish a violation of 8 U.S.C. § 1324(a)(2),[2] the government must prove that: (1) the defendant transported or moved an alien within the United States; (2) the alien was in the United States in violation of the law; (3) the defendant knew this fact; (4) the defendant knew or had reasonable grounds to believe that the alien's last entry into the United States was within the last three years; and (5) the defendant acted willfully in furtherance of the alien's violation of the law.[3]

Merkt admits that she transported Sanchez-Galan and Valle within the United States and knew them to be aliens who had entered the United States illegally within the last three years. The crux of her defense is that she possessed neither the knowledge nor the intent required to violate Section 1324(a)(2): that she did not know that the aliens were "in the United States in violation of law," but that instead she believed them to be political refugees entitled to be in the United States under the provisions of the 1980 Refugee Act.[4] In addition, Merkt asserts that she never intended to further the aliens' illegal presence in this country, but sought only to assist them in reaching San Antonio and in applying there for political asylum. Her intent, she alleges, was to comply with, not violate, the immigration laws. She does not contend that she has a first amendment claim to afford sanctuary to the persecuted as the briefs amicus curiae assert, but only that she sought to comply with the law as she understood it.

Merkt, therefore, requested a jury instruction that the government had to prove beyond a reasonable doubt that she knew that the aliens "were not lawfully entitled to reside within the United States under the terms of any law of the United States, including the Refugee Act of 1980." Merkt also requested an instruction that the government had to prove that she transported the two aliens with the specific intent "to further their presence in the United States in violation of law; that is, to substantially prolong their presence in the United States in violation of law." Finally, she requested an instruction that she should be acquitted if the jury found that she was transporting the aliens "to the nearest viable Immigration and Naturalization Service office for the purpose of allowing them to file applications for asylum."

The district court, however, stated that it was "going to tell [the jurors] just the opposite." The court instructed the jury that a person who comes to this country for the purpose of filing an asylum petition does not have legal status until the application is filed. The belief, the court continued, that a person who has not yet applied for asylum, even though genuinely qualified to seek that aid, has legal status here

---

**2.** 8 U.S.C. § 1324(a)(2) provides, in pertinent part:

> (1) Any person ... who—
> (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law;
>
>     \*    \*    \*    \*    \*    \*
>
> any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immi-

gration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs....

**3.** *United States v. Shaddix,* 693 F.2d 1135, 1137–38 (5th Cir.1982); *United States v. Gonzalez-Hernandez,* 534 F.2d 1353, 1354 (9th Cir.1976). *Cf. United States v. Valenzuela-Bernal,* 458 U.S. 858, 884 n. 4, 102 S.Ct. 3440, 3455 n. 4, 73 L.Ed.2d 1193 (1982) (Brennan, J., dissenting) (citing this formulation of the elements of Section 1324(a)(2) with approval).

**4.** 8 U.S.C. §§ 1101(a)(42)(A), 1158, 1253(h).

is based upon a mistake of law and does not constitute a defense.

The court also instructed the jury, however, that the government had to prove beyond a reasonable doubt that Merkt transported the aliens willfully, or with the specific intent "to further the alien's [sic] illegal presence in the United States." The court then added that the fact that Merkt was taking the aliens to an immigration office was no defense if she knew that there was a closer INS office available.

We will address the propriety of each instruction in turn.

## III.

### A. *"Intent" Instruction*

This circuit has never directly examined the requirement that the defendant act willfully "in furtherance of the alien's violation of law."[5] The Ninth Circuit, however, in *United States v. Moreno*,[6] articulated a standard for determining when the act of transporting is in furtherance of the alien's violation of the law. "[T]here must be a direct and substantial relationship between that transportation and its furtherance of the alien's presence in the United States."[7] If the defendant's act of transporting an illegal alien is "only incidentally connected to the furtherance of the violation of law," it is "too attenuated to come within the boundaries of § 1324(a)(2)."[8]

The court based its analysis on two grounds. First, the court recognized that Section 1324(a)(2) is a penal statute, and, as such, must be strictly construed.[9] In addition, the court found that "Congress, in enacting this provision ... placed a specific qualification on the type of transportation activity it meant to prohibit."[10] A broader interpretation, the court reasoned, one that would prohibit the mere transportation of a known illegal alien, "would render the qualification placed there by Congress a nullity."[11] Subsequent cases have cited *Moreno* with approval.[12]

The district court properly instructed the jury that the government must prove that Merkt transported the aliens willfully in furtherance of their violation of the law. The court further instructed the jury, however,

> that if the defendant knew that the closest Immigration office was in Harlingen, regardless of the consequences of what had taken place there, if the aliens had been taken to Harlingen that would be a defense. If she knew that the closest office was in Harlingen but that notwithstanding, regardless of the consequences, they went to San Antonio, even if they were going there to the Immigration office, that is not a defense.

This amounts to an instruction that, if Merkt intended to take the aliens to any INS office other than the nearest one, they were to find that she had acted with the requisite intent to support a conviction under Section 1324(a)(2). This is an improper instruction.

For the government to show that Merkt transported the aliens willfully "in furtherance of [their] violation of law," as the statute requires, it must show "a direct and substantial relationship between that transportation and its furtherance of the

---

5. *But see United States v. Shaddix, supra,* 693 F.2d at 1138–39.

6. 561 F.2d 1321 (9th Cir.1977).

7. *Id.* at 1323.

8. *Id.* at 1322.

9. *Id.* at 1323, *citing, McBoyle v. United States,* 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1930); *United States v. Fruit Growers Co.,* 279 U.S. 363, 49 S.Ct. 374, 73 L.Ed. 739 (1928).

10. *United States v. Moreno, supra* 561 F.2d at 1332.

11. *Id.* at 1323.

12. *United States v. Shaddix, supra* 693 F.2d at 1139; *United States v. Perez-Gomez,* 638 F.2d 215, 219 (10th Cir.1981); *United States v. Salinas-Calderon,* 585 F.Supp. 599, 601–02 (D.Kan. 1984). *See also United States v. Tindall,* 551 F.Supp. 161, 162 (W.D.Tex.1982).

alien's presence in the United States."[13] Willful transportation of illegal aliens is not, per se, a violation of the statute, for the law proscribes such conduct only when it is in furtherance of the alien's unlawful presence. The jury must be instructed that proof of this element of the offense is prerequisite to conviction.

■ Because the statute condemns such conduct only when it is willful, Merkt is entitled to have the jury consider her intentions in moving the aliens to San Antonio. Determining a criminal defendant's intent is a question of fact that the jury must resolve under the totality of the circumstances and after evaluating all of the evidence.[14] Moreover, when intent is an ingredient of the crime charged, its existence is for the jury to resolve, and "the trial court may not withdraw or prejudge the issue by instruction that the law raises a presumption of intent from an act."[15]

■ The government argues that we must affirm the district court's instruction because, if the jury is permitted to consider a defendant's intent in transporting an alien within the United States to some destination other than the nearest INS office, there will be no way to limit this defense, and the statute will become a nullity. This argument asserts, in essence, that it is difficult to establish that a defendant acted with the specific intent necessary to establish a violation of this section. The statute, however, punishes only an intentional act. No matter how difficult it may be to establish the defendant's state of mind, the government must prove this portion of its case, like every other element of the alleged crime, beyond a reasonable doubt.

The government's problems of proof do not warrant an instruction that removes one of the essential elements of the offense from the jury's consideration.

■ Given that the jury must ultimately determine Merkt's intent, it should be instructed to consider all of the evidence it finds credible about her intentions, direct as well as circumstantial, such as the mode of transportation used, the time of travel, the route chosen, the difference in distance between the Casa and the two INS offices, and the distance from the border at the time of apprehension. If the jury should find as a fact that Merkt intended to present the aliens to the proper officials so that they could seek legal status in this country, it should find that she did not have the requisite criminal intent necessary for a conviction under § 1324.[16] By definition, a person intending to assist an alien in obtaining legal status is not acting "in furtherance of" the alien's illegal presence in this country.

### B. The "Nearest Office" Instruction

■ Although regulations adopted pursuant to the immigration laws vest jurisdiction over an application for asylum with the District Director having jurisdiction over the applicant's place of residence,[17] neither the statute nor the regulation prohibit an alien from applying for asylum at some other office. What we have already said about the necessity of proving specific intent demonstrates that the statute is not violated by the act of transporting an alien to an immigration office merely because that office is not geographically closest to the place where transportation begins.

---

13. *United States v. Moreno, supra* 561 F.2d at 1323.

14. *United States v. Henry,* 749 F.2d 203, 213 (5th Cir.1984); *United States v. Johnson,* 700 F.2d 163, 174 (5th Cir.), *aff'd in part, rev'd in part,* 718 F.2d 1317 (5th Cir.1983) (en banc).

15. *Sandstrom v. Montana,* 442 U.S. 510, 522, 99 S.Ct. 2450, 2458, 61 L.Ed.2d 39 (1979), *quoting Morissette v. United States,* 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952). *See Francis v. Franklin,* —— U.S. ——, ——, 105 S.Ct. 1965,

1968, 85 L.Ed.2d 344 (1985). *Accord United States v. Canales,* 744 F.2d 413, 434 (5th Cir. 1984); *United States v. Fricke,* 684 F.2d 1126, 1128–29 (5th Cir.1982), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 480 (1983).

16. *Cf. United States v. Pereira-Pineda,* 721 F.2d 137, 140 (5th Cir.1983); *United States v. Zayas-Morales,* 685 F.2d 1272, 1277 (11th Cir.1982) (construing § 1324(a)(1)).

17. 8 C.F.R. § 208(1)(a).

## C. The "Viable Office" Instruction

■ Our holding does not imply our endorsement of the jury instruction Merkt tendered to the effect that it would constitute a defense if she intended to transport the aliens "to the nearest viable Immigration and Naturalization Service office for the purpose of allowing them to file applications for asylum." This proposed instruction has no basis in law, and is too ambiguous to serve as a proper guide for directing a jury.

## D. The "Knowledge" Instruction

■ One of Merkt's defenses at trial was that she did not know Sanchez-Galan and Valle were in the United States in violation of the law because she believed them to be bona fide political refugees and, as such, entitled to reside in this country under the terms of the 1980 Refugee Act. Merkt and others testified as to the sincerity of this belief, and the defense requested an instruction that she be acquitted unless the jury found that she knew that the Act did not entitle the aliens lawfully to reside in the United States. The trial court refused, and instead, instructed the jury that a person who enters this country for the purpose of filing an application for asylum does not have legal status until the application is filed. In addition, the court instructed the jury that Merkt's belief that the aliens' genuine qualifications for political asylum entitled them to "legal status" prior to such filing was based on a mistake of law, and could not constitute a defense of the charged crime.

A majority of this panel agrees that the district court correctly instructed the jury on this point. We hold that the district court properly based its instruction on the well-established rule that a citizen is presumed to know the law, and that "ignorance of the law will not excuse." [18] More-

over, although a mistake of fact may constitute a valid defense, the error that Merkt alleges she made is purely a mistake of law, and cannot be stretched into a mistake of fact in order to take advantage of that defense.

## IV.

During its case in chief, the government called Valle and Sanchez-Galan to the stand. Asserting "claims of conscience," both refused to testify against Merkt. The court incarcerated both aliens, and held them in contempt. The government then sought to introduce statements taken from the aliens during their post-arrest interrogation. The prosecution argued that the statements were not inadmissible hearsay because the two witnesses were "unavailable" within the meaning of Federal Rule of Evidence 804 due to their refusal to testify.[19] The defense opposed the admission of the statements on the ground that they had been illegally obtained. The government rejoined that Merkt did not have standing to raise the involuntariness of the aliens' statements.

After a hearing held outside the presence of the jury, the district court ruled that Merkt had established that the statements were taken illegally, and that, "in the ordinary case," they would be excluded. Finding, however, that the government had granted immunity to the aliens and that the evidence would not be used against them, the court ruled that Border Patrol agents might relate the information received during their interrogation of the aliens. After the prosecution rested, the defense called the two aliens to the stand and both then testified fully on direct and cross-examination.

■ Merkt is correct that she has standing to assert that admission of the aliens' statements violated her own fifth

---

**18.** *Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 243, 2 L.Ed.2d 228 (1958). *Accord United States v. Jones,* 642 F.2d 909, 914 (5th Cir.1981).

**19.** Fed.R.Evid. 804(a)(2) provides:

(a) Definition of Unavailability. "Unavailability as a witness" includes situations in which the declarant—
(2) persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so.

amendment due process right to a fair trial. A defendant may assert her own fifth amendment right to a fair trial as a valid objection to the introduction of statements extracted from a non-defendant by coercion or other inquisitional tactics.[20]

The government's reliance on *United States v. Fredericks* [21] on this point is misplaced. In *Fredericks* the defendants moved to suppress the witness's in court testimony on the ground that prior to trial, a statement had been elicited from her "in derogation of *Miranda* precepts." The witness had been subjected to one custodial interrogation before she was given her *Miranda* warnings. The statement given during the interview, however, was not offered at trial. Adverting to the fact that "there was not the slightest indication in the record" that the witness's in court testimony was unreliable, the court concluded that the defendants' rights to due process and a fair trial had not been jeopardized by the introduction of the witness's testimony.[22] *Fredericks* is thus wholly consistent with our finding that the admission at trial of a coerced out-of-court statement from a non-defendant may violate the defendant's right to a fair trial as guaranteed by the due process clause of the fifth amendment.

■ Our conclusion that Merkt has standing to raise this objection, however, is not a determination of the merits of her claim. The violation of a witness's due process rights by failing to give the witness *Miranda* warnings is not per se a violation of the rights of a defendant against whom that witness's statement is adduced. Neither *Miranda* nor any case in the line of decisions it generated has ever so held. To establish that the admission of the aliens' statements taken without *Miranda* warnings violates her own due process rights, Merkt must establish that "the

government's investigation methods resulted in a fundamentally unfair trial." [23]

The government introduced the aliens' statements as part of its case in chief. The aliens themselves later testified during the presentation of the defendant's case, and responded to the government's cross-examination. Although there appear to be some factual inconsistencies between the aliens' out-of-court statements, as reported by the Border Patrol agents, and the aliens' subsequent in-court testimony, Merkt points to no substantial contradictions between the two recitations.

■ Merkt has not established how the Border Patrol agents' testimony deprived her of a fair trial. She has neither asserted that the aliens would not have testified on her behalf had their statements not been adduced as part of the prosecution case, nor has she contended that the agents' version of the statements was distorted, even though there were minor inconsistencies between the agents' accounts and the aliens' testimony. She has not even alleged that the use of the testimony violated her sixth amendment right to confront the witnesses against her. We, therefore, find no error in the district court's decision to allow these statements into evidence. Given that the aliens' admittedly unlawfully-obtained statements merely recited, in large part, what the aliens themselves later testified to, and that Merkt can point to no fundamental unfairness to her that resulted from the use of the statements, we affirm the district court's decision to admit this evidence.

Even assuming the correctness of the aliens' account of the treatment they said they received while initially confined by the INS agents, the testimony was admissible.

**20.** See *United States v. Fredericks,* 586 F.2d 470, 481 (5th Cir.1978). *Accord United States v. Chiavola,* 744 F.2d 1271, 1273 (7th Cir.1984); *United States ex rel. Cunningham v. DeRobertis,* 719 F.2d 892, 895–96 (7th Cir.1983); *LaFrance v. Bohlinger,* 499 U.S. 29, 35 (1st Cir.), *cert. denied,* 419 U.S. 1080, 95 S.Ct. 669, 42 L.Ed.2d 674 (1974); *Bradford v. Johnson,* 354 F.Supp. 1331,

1336–37 (E.D.Mich.1972), *aff'd per curiam,* 476 F.2d 66 (6th Cir.1973).

**21.** 586 F.2d 470 (5th Cir.1978).

**22.** *Id.* at 480–81.

**23.** *United States v. Chiavola,* 744 F.2d 1271, 1273 (7th Cir.1984).

If the law enforcement agents did in fact intimidate or coerce the aliens, their conduct was improper, but not so egregious as to prompt exclusion of the evidence as a prophylactic measure.

## V.

■ Finally, Merkt contends that, because the Border Patrol's stop and search of Sister Muhlenkamp's car violated the fourth amendment's prohibition against unreasonable searches and seizures, the district court erred in admitting evidence obtained as a result of that stop. The district court held a hearing on Merkt's motion to suppress, and found that, "a reasonable suspicion was aroused in the Border Patrol Officers which was based upon particularized and objective articulable factors such that the stop of the vehicle in which Miss Merkt was a passenger did not violate the Fourth Amendment to the United States Constitution." The court based this holding on separately entered findings of fact and conclusions of law. Because Merkt has not demonstrated that any of the district court's factual findings are clearly erroneous, or that the court erred in applying the appropriate legal standard to these facts, we find no reason to overturn the district court's decision denying Merkt's motion to suppress.

For these reasons, Merkt's conviction on all three counts is REVERSED, and her case REMANDED to the district court for a new trial.

ALVIN B. RUBIN, Circuit Judge, concurring in the result, and dissenting in part from the opinion.

Although I concur in the result, I disagree with the view of the majority concerning the "knowledge instruction," Part IIID of the opinion. The aphorism that imputes knowledge of the law to all is not applicable if a mistaken belief concerning how the law would treat a situation negatives the existence of the *mens rea* essential to the crime charged.[1] If "an apparent 'mistake of law' was actually a 'mistake of fact' in that the mistake pertained to a question of legal status which was determined by a law other than the one under which the defendant was prosecuted," such a mistake constitutes a valid defense.[2]

Section 1324(a)(2) makes it criminal for a person to transport an alien, *"knowing that he is in the United States in violation of law."* (Emphasis added.) The statute does not penalize the transportation of any alien who has not lawfully been admitted to the United States by a person who is not aware of the alien's illegal status. The defendant's knowledge of the alien's illegal status is an essential element of the offense, which the government is required to prove.[3] This status, in turn, can be determined only by reference to a law separate from the one defining the crime Merkt allegedly committed. If Merkt could establish that she was ignorant of the true legal status of the two aliens, therefore, she should be allowed to assert this state of mind, however, mistaken it was, as a defense to her prosecution under § 1324(a)(2).[4]

---

1. W. LaFave & A. Scott, Jr., Criminal Law § 47 (1972); Wharton's Criminal Law § 77 (14th ed. 1977).

2. *United States v. Currier,* 621 F.2d 7, 9 n. 1 (1st Cir.1980). *See United States v. Freed,* 401 U.S. 601, 610, 91 S.Ct. 1112, 1119, 28 L.Ed.2d 356 (1971) (Brennan, J., concurring).

3. *See Liparota v. United States,* —— U.S. ——, ——, 105 S.Ct. 2084, 2092, 85 L.Ed.2d 434 (1985); *United States v. Fierros,* 692 F.2d 1291, 1294 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

4. *Id. See also Bland v. United States,* 299 F.2d 105, 107–08 (5th Cir.1962).