UNITED STATES of America

v.

Ivan MORENO–DUQUE.

Crim. A. No. 89–03–01.

United States District Court,
D. Vermont.

Aug. 15, 1989.

Mary Kehoe, Gear and Davis, Burlington, Vt., for defendant.

Charles Caruso, Asst. U.S. Atty., Rutland, Vt., for U.S.

## OPINION AND ORDER

BILLINGS, Chief Judge.

By motion filed March 23, 1989, defendant Ivan Moreno–Duque moves pursuant to Fed.R.Crim.P. 29(c) for judgment of acquittal, following his conviction by a jury on two counts of transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(B). Defendant also filed a motion for a new trial pursuant to Fed.R.Crim.P. 33, but subsequently withdrew that motion. By written response filed June 1, 1989, the government opposes defendant's motion for judgment of acquittal.

## BACKGROUND

This criminal matter arises out of an incident occurring on December 21, 1988, in the State of Vermont. Defendant, a construction contractor, was traveling north on Interstate 89, en route from Waterbury, Connecticut to Williston, Vermont. With him in the car were two of his employees, Pilinio Zavalar–Quevedo and Walter Larrea–Jarrin, both of whom were aliens remaining in the United States in violation of the law. Defendant knew or had reason to know that they were illegal aliens. At the time, he was transporting them from one job site to another.

At a point near Montpelier, Vermont, defendant pulled over and stopped in the breakdown lane to wait for another vehicle. It was broad daylight, and defendant turned on his emergency flashers. A state trooper stopped to see if defendant's car needed assistance. The officer became suspicious when he realized that defendant's passengers did not speak English. A border patrol agent who spoke Spanish was called to the scene to assist in questioning the two passengers. Subsequently, defendant was taken into custody at the border patrol station in Richford, Vermont.

## DISCUSSION

Ivan Moreno–Duque was charged in a two-count indictment for violations of 8 U.S.C. § 1324(a)(1)(B). He was charged with one count per alien allegedly transported in violation of the law. The statute provides:

(a) Criminal Penalties

    (1) Any person who—

    ·    ·    ·    ·    ·

    (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

    ·    ·    ·    ·    ·

shall be fined in accordance with Title 18, or imprisoned not more than five years, or both, for each alien in respect to whom any violation of this paragraph occurs.

8 U.S.C. § 1324(a)(1)(B).

The issue now before us is a narrow one: whether an employer's transportation of an illegal alien-employee, to a place of employment and for the purpose of employment, is sufficient to satisfy the essential element of willful transportation "in furtherance of" the alien's violation of law, within the meaning of 8 U.S.C. § 1324(a)(1)(B).

We are warranted in granting defendant's motion for judgment of acquittal only if the evidence presented by the government at trial was insufficient as a matter of law to sustain defendant's conviction. The evidence must be viewed in

the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and all reasonable inferences must be drawn in favor of the government. *United States v. Rastelli, et al.*, 870 F.2d 822, 827 (2d Cir.1989).

Defendant concedes that he was transporting the two aliens in interstate commerce, knowing them to be illegally in the country. While proof of this was essential to the government's case in chief, it is not relevant to the issue here. Both the defendant and the government agree that defendant was transporting the aliens from one job site to another. As construction workers, the aliens were being transported in the usual and normal course of their employment. There was no evidence to suggest that defendant's purpose in transporting the aliens was in any way related to their entry into the country, to efforts to conceal their unlawful presence, or efforts to avoid detection by law enforcement authorities. Quite simply, the evidence revealed, and the government concedes, that defendant was transporting the two aliens to a place of employment, as their employer and for the purpose of the employment.

Subsection 1324(a)(1)(B), former 8 U.S.C. § 1324(a)(2), was amended by Congress in 1986 as part of the Immigration Reform and Control Act (IRCA). Prior to these changes, this subsection had not been amended since 1952, when it was incorporated into § 1324 by Congress.

The current version is identical to its 1952 predecessor insofar as it requires the transportation to be "in furtherance of" the alien's violation of law. However, it differs from the prior version in other material aspects. The prior version required

the government to prove beyond a reasonable doubt that, at the time of the transportation, the defendant knew or had reasonable grounds to believe that the alien's last entry into the United States had occurred within the last three years. This requirement was eliminated by IRCA.

The 1986 IRCA reforms made two other statutory changes that are pertinent to our analysis. First, Congress eliminated a general proviso under § 1324 stating, "[t]hat for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring." Second, Congress newly added § 1324a to Title 8 which, among other things, makes it a misdemeanor to knowingly employ illegal aliens.[1] Under this new section, a person found to be engaging in a pattern or practice of employing unauthorized aliens is subject to imprisonment for up to six months for each alien employed.

Neither the post-IRCA version of 8 U.S.C. § 1324 nor its 1952 predecessor includes a definition the term "in furtherance of" as contained in the transportation subsection. Consequently, courts have grappled with this language over the years, as discussed below. The pre-IRCA proviso exempting employment practices from unlawful "harboring" of aliens (as prohibited under 8 U.S.C. § 1324(a)(1)(C); former § 1324(a)(3)) has been of only limited assistance in interpreting the transportation subsection because of its narrow literal scope.

In 1977, the Ninth Circuit faced the difficult task of having to interpret the "in furtherance of" language of the pre-IRCA transportation subsection in the seminal case of *United States v. Moreno*, 561 F.2d 1321 (9th Cir.1977). In *Moreno*, the defen-

---

[1]. 8 U.S.C. § 1324a states in pertinent part:
(a) Making employment of unauthorized aliens unlawful
(1) In general
It is unlawful for a person or other entity to hire, or to recruit or refer for a fee, for employment in the United States—
(A) an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of this section) with respect to such employment,

.    .    .    .    .

(f) Criminal penalties and injunctions for pattern or practice violations
(1) Criminal penalty
Any person or entity which engages in a pattern or practice of violations of subsection (a)(1)(A) ... of this section shall be fined not more than $3,000 for each unauthorized alien with respect to whom such a violation occurs, imprisoned for not more than six months for the entire pattern or practice, or both, notwithstanding the provisions of any other Federal law relating to fine levels.

dant was a construction foreman who had transported construction workers, whom he knew to be illegal aliens, in the normal course of their employment. Holding that there must be a "direct or substantial relationship" between the transportation and its furtherance of the aliens' violation of law, the Ninth Circuit determined that the defendant's transportation of his co-workers was not "in furtherance of" their illegal presence in the United States.[2] The court reasoned, "A broader interpretation of the transportation section would render the qualification placed there by Congress a nullity. To do this would potentially have tragic consequences for many Americans who come into daily contact with undocumented aliens and who, with no evil or criminal itent, intermingle with them socially or otherwise." *Id.* at 1323. In dictum, the Ninth Circuit also suggested that a different result might be appropriate in other cases of employment-related transportation. *Id.*

The United States, in this case, takes the position that defendant Moreno–Duque's transportation of the two aliens, as their employer, was per se in furtherance of their violation of law. The government argues that the transportation was directly related to their illegal presence, thereby satisfying the test in *Moreno.* In its opposition memorandum, the government asserts, "[t]ransportation *for the purpose of employment,* quite simply, allows one to remain within the United States. Never more appropriately than in the case of Ivan Moreno–Duque is this definition more fitting." [Emphasis added.]

In support of its position, the government cites the pre-IRCA case, *United States v. Shaddix,* 693 F.2d 1135 (5th Cir. 1982). In *Shaddix,* however, the evidence revealed that the defendant-employer had taken specific steps to conceal the illegal aliens from detection by the authorities.

*Id.* at 1137. In other words, *Shaddix* was not a case of transportation strictly incident to the employment. Nevertheless, the court's conclusion of law is noteworthy:

> Although defendant employer was not implicated in the aliens' illegal entry into this country, his offer of employment to and voluntary transportation of aliens whom the jury concluded he knew had entered the country illegally within the last three years sufficiently furthered their illegal presence in this country to constitute a violation of section 1324(a)(2).

*Id.* at 1139.

In a later Fifth Circuit case involving an interpretation of the "in furtherance of" language of the pre-IRCA transportation subsection, *United States v. Merkt,* 764 F.2d 266 (5th Cir.1985), the court found the evidence there to be insufficient to convict under 8 U.S.C. § 1324(a)(2). The evidence at trial had indicated that, although the defendant may have been lawfully transporting illegal aliens to an office of the Immigration and Naturalization Services (INS) to apply for political asylum, she did not take them to the nearest INS office from her point of departure. The district court's instructions, in effect, told the jury that "if Merkt intended to take the aliens to any INS ofice other than the nearest one, they were to find that she had acted with the requisite intent to support a conviction under Section 1324(a)(2)." *Id.* at 271. While the facts in *Merkt* were clearly different from the facts before us, the court's reasoning is again instructive. In *Merkt,* the Fifth Circuit refined its position: "[w]illful transportation of illegal aliens is not, per se, a violation of the statute, for the law proscribes such conduct only when it is in furtherance of the alien's unlawful presence;" the court went on to refer to this essential element as requiring a factual finding of "specific intent." *Id.* at 272.

**2.** Since *Moreno* was decided, courts have almost universally adopted the "direct or substantial relationship" test for the requirement that the transportation be "in furtherance of" the alien's violation of law. *See, e.g., United States v. Morales–Rosales,* 838 F.2d 1359, 1361 (5th Cir. 1988); *United States v. One 1982 Chevrolet Crew–Cab Truck,* 810 F.2d 178, 182 (8th Cir. 1987); *United States v. Merkt,* 764 F.2d 266, 271–272 (5th Cir.1982); *United States v. Salinas–Calderon,* 585 F.Supp. 599, 602 (D.Kans.1984); *United States v. Shaddix,* 693 F.2d 1135, 1139 (5th Cir.1982); *United States v. Perez–Gomez,* 638 F.2d 215, 218–219 (10th Cir.1981).

Under a truly principled and technical application of the *Moreno* test, the Fifth Circuit would have had to concede that defendant's transportation of the aliens beyond the nearest INS office was "directly" related to this furtherance of their illegal presence in the United States. The court, however, was focusing on the purpose of the transportation, not its effect.

The government also relies on *United States v. One 1982 Chevrolet Crew–Cab Truck*, 810 F.2d 178 (8th Cir.1987), a pre-IRCA civil forfeiture case which is factually on point.[3] In *One 1982 Chevrolet Crew–Cab*, the Eighth Circuit upheld the district court's summary judgment order for the forfeiture of the truck. The owner of the truck, who appealed the forfeiture, had used it to transport illegal aliens whom he employed. The district court found no issue of material fact as to whether the truck had been used "in furtherance of" the unlawful presence of certain illegal aliens. Distinguishing *Moreno*'s facts, the Eighth Circuit noted, "[h]ere [appellant] is not a third party employee only incidentally connected to the violation; he is the employer and as such his provision of transportation for the aliens was clearly in furtherance of a violation of § 1324(a)." We disagree with this statement of the law.

The Sixth Circuit very recently decided another civil forfeiture case requiring an interpretation of the "in furtherance of" language in the post-IRCA transportation subsection. *United States v. 1982 Ford Pick–Up*, 873 F.2d 947 (6th Cir.1989). In this case, the pick-up truck was used to transport illegal aliens to Kentucky, not as an incident of their employment, but rather presumably so they could find employment once there. In its decision reversing the district court's grant of summary judgment for the government, the Sixth Circuit emphasized the facts that the claimants had made no attempt to hide their passengers or otherwise help them to avoid or escape detection, and that the claimants did not receive any financial compensation for helping the aliens move.

Most importantly, the Sixth Circuit's well-reasoned opinion provided a long-overdue acknowledgement of the limited usefulness of *Moreno* "direct or substantial relationship" test. The court wrote,

On its own terms, ... it seems that *Moreno* was wrongly decided. In *Moreno*, the defendant knowingly transported illegal aliens to a job site where they had established employment. This employment supported these illegal aliens financially, provided them with the daily necessities of life and gave them hope for the future. No one could reasonably suggest that there was no "direct or substantial relationship between the transportation and its furtherance of the alien's presence in the United States" since this language focuses on the effect of the transportation not upon its purpose.

... While appealing to common sense on a rhetorical level, the *Moreno* approach fails to draw any sort of principled distinction "between acts performed with the purpose of promoting an alien's illegal conduct, and acts which are incidental to or merely permit an individual to maintain his existence, albeit his existence occurs in this country and he is not duly admitted here. The reason for this failure is because the approach focuses on the effect of the transportation of the illegal alien and not upon its purpose.

*Id.* at 950–951. (citations omitted.)

Thus, the court's holding turned on its finding that, "[t]he *purpose* of the [claimant's] transporting the aliens ... was not to support their illegal presence, *though that may have been the ultimate effect.* Their purpose was to promote the well-being of friends and relatives by helping them obtain employment." [Emphasis added.] *Id.* at 952. *C.f. United States v. Salinas–Calderon*, 585 F.Supp. 599 (D.Kan.1984) (defendant's transportation of co-workers who were illegal aliens was insufficient to establish guilt under 8 U.S.C.

---

**3.** While these civil forfeiture cases differ in the government's standard of proof, the same issues of law are presented in interpreting 8 U.S.C.

§ 1324(a)(1)(B), and former 8 U.S.C. § 1324(a)(2).

§ 1324(a)(2) where there was no harboring or concealment, even though the aliens were being transported to a place where they may have obtained employment.)

We agree with the Sixth Circuit's conclusion that a violation of 8 U.S.C. § 1324(a)(1)(B) requires proof that the purpose of the transportation was to further the violation of law. In other words, the government must prove that the defendant specifically intended by means of the transportation to advance or assist the alien's violation of law, not merely that the effect of the transportation was to allow the alien to remain in the United States. Upon reflection, it seems clear that this reading of the law is mandated as a matter of statutory interpretation, as penal statutes must be strictly construed. *U.S. v. 1982 Ford Pick–Up, supra,* 873 F.2d at 950. (citing *Moreno, supra,* 561 F.2d at 1323; citing *McBoyle v. United States,* 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931)). Focusing the inquiry on the purpose of the transportation makes it clear that what defendant did in this case was no more culpable than what defendants Moreno and Merkt did in their cases.

Viewing 8 U.S.C. § 1324(a)(1)(B) in its historical and legislative context also supports this interpretation. As noted above, IRCA made significant changes in the relevant statutory provisions. One change was the elimination of the pre-IRCA requirement that the transportation be done "knowing or having reasonable grounds to believe that [the alien's] last entry into the United States occurred less than three years prior [to the transportation]...." The significance of this pre-IRCA proviso is to show that the transportation subsection, even before 1986, required a level of intent connecting the transportation with the alien's violation of the law beyond mere knowledge that the transportation helps the alien remain in the United States. In *United States v. Lopez,* 521 F.2d 437 (2d Cir.1975), *cert. denied,* 423 U.S. 995, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975), involving an interpretation of the harboring provision under former 8 U.S.C. § 1324(a)(3), the Second Circuit specifically commented on the

significance of this three-year knowledge requirement in the transportation subsection. The Second Circuit observed, "[t]ransportation at a point in time so long after the illegal entry would not normally be in furtherance of the smuggling process, which would long since have been completed." *Id.* at 440.

The older version of the statute also contained an exception to the harboring provision for employment, and normal and usual employment practices incident thereto. This exception was deleted pursuant to IRCA. While this deletion in isolation suggests that there no longer is an exception to the harboring provision for employment and employment-related practices, this clearly is not the case in light of the overall IRCA reforms. Congress simultaneously enacted a new section, 1324a, which in effect now makes it a misdemeanor to knowingly employ illegal aliens. This new section manifests Congress' intent to create criminal liability for knowing employment of illegal aliens, to the extent of making it a misdemeanor.

Accordingly, we believe that the harboring provision in 8 U.S.C. § 1324(a)(1)(C) would still require more than mere knowing employment of an illegal alien to satisfy its intent criteria. Likewise, we conclude that 8 U.S.C. § 1324(a)(1)(B) also requires more than mere knowing employment and employment-related transportation of illegal aliens to satisfy all of its essential elements, for we cannot say that Congress intended the incongrous result of treating some employers as felons, and others as misdemeanants, merely on the basis of whether or not their business involves transportation.

CONCLUSION

In sum, we construe this penal statute strictly, as we must, and hold that the law required the government to prove beyond a reasonable doubt that the *purpose* of the transportation was in whole or in part to further the aliens' violation of law. For the foregoing reasons, we find that the government's proof that Ivan Moreno–Duque knowingly transported the two illegal

aliens, as their employer and for the purpose of employment, was insufficient as a matter of law to satisfy this burden.

Defendant's motion for judgment of acquittal is hereby GRANTED.

SO ORDERED.