**UNITED STATES of America, Appellee,**

v.

**ONE 1982 CHEVROLET CREW-CAB TRUCK VIN 1GCHK33M9C143129, Appellant.**

**No. 86–1257.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 2, 1986.

Decided Jan. 28, 1987.

Fritz Vammen, Little Rock, Ark., for appellant.

Mark W. Webb, Asst. U.S. Atty., Fort Smith, Ark., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Salvadore Oseguera appeals from a judgment of the District Court granting forfeiture of his 1982 Chevrolet Crew-Cab Truck to the United States. We affirm.

## I.

Salvadore Oseguera owns and operates a tree planting business in Arkansas. On the evening of January 25, 1985, an officer of the Waldron, Arkansas police department stopped Oseguera's 1982 Chevrolet truck on suspicion that the driver, Benjamin Moreno-Murillo, was intoxicated. There were three other Hispanic males in the truck. Moreno-Murillo spoke only broken English and the other occupants could

not speak any English. The officer took the four individuals to the police station and contacted the U.S. Border Patrol. After talking with the four individuals in Spanish over the phone, a Border Patrol agent requested that they be detained. The truck and the four occupants were removed to the Border Patrol station in North Little Rock. Later that same evening, three other Hispanic males were arrested by the Waldron police. Border Patrol agents subsequently interviewed each of the individuals.

All seven individuals admitted that they were citizens of Mexico and had illegally entered the United States within the last three years. The aliens all stated that Oseguera knew they were illegally in this country, that Oseguera employed them, and that he used the seized truck to transport them to and from a work site near Waldron. Moreno-Murillo stated further that Oseguera had given him permission to drive the truck on the day it was seized.[1]

Upon completing their interviews with the seven aliens, the Border Patrol agents determined that none of the aliens possessed evidence favorable to Oseguera in a criminal prosecution under 8 U.S.C. § 1324 (1982). *See United States v. Valenzuela-Bernal,* 458 U.S. 858, 872–73, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). Based on that conclusion, the Border Patrol returned five of the aliens to Mexico on January 29, 1985. Two of the other aliens were released and granted until February 27, 1985 to depart the United States voluntarily.

Based on the aliens' statements, the Border Patrol decided to proceed with administrative forfeiture of the truck. The truck was seized pursuant to 8 U.S.C. § 1324(b), and was placed in storage.

On January 28, 1985, one day before five of the aliens departed for Mexico, Oseguera arrived at the Border Patrol office and inquired about his truck and equipment. Oseguera claimed that he did not know the workers were illegal aliens. He did not claim that the aliens had stolen the truck. At a Border Patrol agent's request, Oseguera went to the Arkansas Detention Facility and talked with Moreno-Murillo.

The United States filed its complaint for forfeiture on March 22, 1985. After filing an answer, Oseguera filed a motion to compel the government to produce the aliens as witnesses or else to have the forfeiture proceedings dismissed. The United States filed its response, and the District Court advised both parties that it intended to treat the filings as cross-motions for summary judgment. Both parties were invited to supplement their previous filings and were given time to do so. On December 7, 1985, the court issued its memorandum opinion and judgment denying Oseguera's motion and ordering forfeiture of the truck to the United States.

On appeal, Oseguera argues that summary judgment was improper because there are genuine disputes of material fact with respect to (1) the government's prima facie case for forfeiture under 8 U.S.C. § 1324(b)(5), and (2) Oseguera's defense that the truck was unlawfully in the possession of Moreno-Murillo. Oseguera further argues that as a matter of law he should have had summary judgment in his favor because, in his view, the government violated his Sixth Amendment right to confront witnesses by forcing the aliens to leave the United States before the forfeiture proceeding had commenced.

## II.

When reviewing a district court's entry of summary judgment, we employ the same standard as that employed by the District Court. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Summary judg-

---

1. Oseguera denies that he gave such permission to Moreno-Murillo. However, he admits having given permission to drive the truck to Miguel Castillo-Valencia, one of the other illegal aliens who was arrested by the local police that same evening. According to the government's affidavits, Castillo-Valencia stated that he and the six other aliens had traveled to Waldron in the truck and that after their arrival in Waldron, he and two of the aliens had gotten out of the truck, leaving it with Moreno-Murillo and the other three occupants.

ment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). All evidence must be viewed in the light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences derived from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

### A.

Forfeiture under § 1324(b) requires the government to demonstrate probable cause that the conveyance seized was being used in the commission of a violation of § 1324(a). 8 U.S.C. § 1324(b)(1), (b)(5). This means that the government must make a prima facie showing that:

> (1) defendant transported an alien within the United States, (2) the alien was in the United States in violation of law, (3) this was known to the defendant, (4) defendant knew or had reasonable grounds to believe that the alien's last entry into the United States was within the last three years, and (5) defendant acted willfully in furtherance of the alien's violation of the law.

*United States v. Shaddix*, 693 F.2d 1135, 1137–38 (5th Cir.1982) (citing *United States v. Gonzalez-Hernandez*, 534 F.2d 1353, 1354 (9th Cir.1976)). Once the government has made this prima facie showing of a § 1324(a) violation and has shown that the seized vehicle was used as the means of transporting the illegal alien, the burden then shifts to the claimant to rebut the government's prima facie case. 8 U.S.C. § 1324(b)(5).

The District Court, after reviewing the government's brief and affidavits, found that the United States had met its burden of establishing probable cause to believe that a violation of § 1324(a) involving the seized truck had occurred. In addition, the court ruled that Oseguera had produced no countervailing evidence presenting a genuine issue of material fact. For reversal, Oseguera argues that the government failed to meet its burden of proof with respect to two elements of its prima facie case: his knowledge of the aliens' illegal entry, and the transportation requirement.

As to Oseguera's knowledge of the aliens' illegal entry, each of the aliens, including the driver, Moreno-Murillo, stated in their affidavits that (1) they were illegal aliens; (2) they met Oseguera shortly after entry; and (3) they told Oseguera they were illegally in the United States. Oseguera's only rebuttal to these statements is found in his complaint, where he denies any knowledge of the aliens' illegal status. In addition to the statement of the aliens, government affidavits show that Oseguera previously had admitted to a border patrol agent that he had hired illegal aliens in the past, and had stated that he could recognize an illegal alien when he saw one. The government also has produced documentary evidence that over 150 illegal aliens employed by Oseguera have been apprehended since 1980. Moreover, three of the aliens apprehended in the truck could not speak any English. We believe that the government's evidence is ample to show conclusively that Oseguera had reasonable grounds to believe the aliens had entered the United States within the last three years. Significantly, Oseguera does not assert in his affidavit that he was unaware of his employees' illegal entry. In light of the government's evidence, Oseguera can " 'not rest upon the mere allegations ... of his pleading, but ... by affidavits ... must set forth specific facts showing there is a genuine issue for trial.' " *Cassidy, Inc. v. Hantz*, 717 F.2d 1233, 1236 (8th Cir.1983) (per curiam) (quoting Fed.R. Civ.P. 56(e)); *see generally Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Because of the weight of the government's evidence and Oseguera's failure to present specific factual evidence that might have raised a triable issue with respect to the knowledge element of the government's prima facie

case, we find no bar here to the entry of summary judgment.

■ Oseguera attacks one other element of the government's prima facie case, contending that the government failed to show that the transportation of the aliens was in willful furtherance of a violation of the law. He argues that as a matter of law, a defendant's transportation of illegal aliens as an act merely incidental to his employment of them does not give rise to a violation of § 1324(a), and therefore should not give rise to forfeiture under § 1324(b). In support of this argument, Oseguera cites *United States v. Moreno*, 561 F.2d 1321 (9th Cir.1977), which dealt with the transportation of illegal aliens as part of a defendant's employment as a foreman. In that case, the Ninth Circuit held that the transportation "was only incidentally connected to the furtherance of the violation of law, if at all," and reversed that defendant's conviction under § 1324(a). *Id.* at 1322. While *Moreno* offers some support for Oseguera's argument, we believe that *United States v. Shaddix* is closer on its facts and supports a finding of probable cause here. In *Shaddix*, the Fifth Circuit held that an employer's offer of employment and his voluntary transportation of aliens known to have entered the United States illegally sufficiently "furthered [the aliens'] illegal presence in this country to constitute a violation of § 1324(a)(2)." 693 F.2d at 1139 (footnote omitted). Here, Oseguera is not a third party employee only incidentally connected to the violation; he is the employer and as such his provision of transportation for the aliens was clearly in furtherance of a violation of § 1324(a).

We agree with the District Court that Oseguera failed to raise any genuine issue of material fact with respect to the elements of the government's prima facie case. We further agree that the government's showing conclusively demonstrated the elements of a prima facie case and therefore, as a matter of law, established probable cause for forfeiture of the truck under § 1324(b).

**B.**

Oseguera contends that summary judgment nevertheless was improper, arguing that there is a genuine issue of material fact concerning his affirmative defense. Section 1324(b)(1)(B) provides that where the owner of a vehicle can establish that the vehicle was "unlawfully in the possession" of the user in violation of state or federal law, the owner can avoid forfeiture. 8 U.S.C. § 1324(b)(1)(B). In addition, 8 C.F.R. § 274.5(b)(3) provides that forfeiture may be avoided where the vehicle was "used in an act to which the owner was not privy; or did not consent, and the owner took all reasonable steps to prevent the illegal use of the conveyance." The law clearly places the burden of proof on Oseguera to establish that Moreno-Murillo was unlawfully in possession of the truck, or that the truck was used without Oseguera's consent after he had taken reasonable steps to prevent its use.

■ At no time has Oseguera claimed that Moreno-Murillo stole the seized vehicle, or that Moreno-Murillo was in possession of the truck in violation of any state or federal law. Oseguera alleges only that he did not give permission to Moreno-Murillo to drive the truck. Accordingly, Oseguera's sole recourse is to 8 C.F.R. § 274.5(b)(3), and under that regulation he must demonstrate that the truck was used without his consent and that he took reasonable steps to prevent the unlawful use. For this purpose, Oseguera rests solely on conclusory statements set out in his pleadings. He has presented no evidence of having taken reasonable steps to prevent the use of his truck to transport illegal aliens. Indeed, he admits to having permitted use of the truck by another illegal alien on the evening it was seized. Oseguera has not, by affidavits or otherwise, set forth specific facts tending to show that his truck was used by Moreno-Murillo without his consent or that he took reasonable steps to prevent the unlawful use of his vehicle. Accordingly, we agree with the District Court that there was no genuine dispute of material fact on this issue, and that sum-

mary judgment in favor of the government was appropriate.

## C.

Oseguera's final argument is that the judgment below must be reversed and judgment entered in his favor because the government violated his Sixth Amendment right to confront witnesses by requiring the illegal aliens to leave the country before the forfeiture proceedings were begun. He contends that (1) forfeiture proceedings are criminal in nature; (2) he is therefore entitled to the protection of the Sixth Amendment; and (3) the District Court should have dismissed the forfeiture proceedings because the witnesses were placed beyond the court's subpoena power in violation of the Sixth Amendment.

■ Forfeiture actions are clearly civil actions against property, and not criminal actions against an individual defendant. *See, e.g., United States v. Rapp*, 539 F.2d 1156, 1160 (8th Cir.1976). As noted by the Supreme Court in *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 236, 93 S.Ct. 489, 492, 34 L.Ed.2d 438 (1972), Congress can prescribe both criminal and civil penalties for the same offense, and "[t]he fact that the sanctions [are] ... separate and distinct ... is relevant in determining the character of the forfeiture." In this case, § 1324 contains separate and distinct criminal and civil sanctions for its violation.

■ Although civil in form, forfeitures may in some circumstances warrant certain procedural protections usually reserved for criminal proceedings. *See, e.g., One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 700–02, 85 S.Ct. 1246, 1250–51, 14 L.Ed.2d 170 (1965). However, civil forfeiture is permissible even if the owner is innocent of criminal wrongdoing, where the owner can show no evidence that he took steps to prevent the prohibited use of his property. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689–90, 94 S.Ct. 2080, 2094–95, 40 L.Ed.2d 452 (1974). It follows that the full panoply of constitutional protections afforded criminal defendants is not available in the context of such forfeiture proceedings. *Cf. Immigration and Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1040, 104 S.Ct. 3479, 3485, 82 L.Ed.2d 778 (1984) (exclusionary rule not available in forfeiture proceedings).

In evaluating the merits of Oseguera's claim that the Sixth Amendment's Confrontation Clause should apply in this civil case, the Supreme Court's opinion in *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872–73, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982), is instructive. Reviewing a similar challenge to a criminal conviction under § 1324, the Court held:

> The mere fact that the Government deports ... witnesses [whom the Government in good faith determines possess no information favorable to the defendant in a § 1324 action] is not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment.... [T]he criminal defendant [must] make ... a plausible showing that the testimony of the deported witnesses would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.

The Court held further that "[a]s in other cases concerning the loss of material evidence, sanctions will be warranted for deportation of alien witnesses only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* at 873–74, 102 S.Ct. at 3450. This test may not be appropriate to evaluate all Confrontation Clause claims, but we find its reasoning persuasive on the facts of this case.

■ In his affidavit, Oseguera merely asserts that the driver Moreno-Murillo's statements were untrue and that, on the stand, he would testify that Oseguera had not given him permission to use the truck. Nothing in the record suggests that any alien's testimony would rebut the government's prima facie case. At best, Moreno-Murillo's testimony would be that he was driving the truck without Oseguera's per-

mission. Even if such testimony were available, it could not change the outcome of the District Court's decision, because, as we have noted earlier in this opinion, Oseguera failed to raise any issue of his having taken reasonable precautions to prevent the unlawful use of the truck by Moreno-Murillo or anyone else. Based on these facts, we find Oseguera's Sixth Amendment claim to be without merit.

The decision of the District Court is affirmed.