**UNITED STATES, Plaintiff,**

**v.**

**ONE 1984 CHEVROLET TRUCK, VIN IGHBC34JXEV103195, Defendant.**

**Civ. A. No. 1:86–cv–942–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 25, 1988.

Barbara Vaughn Tinsley, U.S. Attys. Office, Atlanta, Ga., for plaintiff.

Barry Arnold Karp, Turnquest & Twitty, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Claimant Martin Macias filed a claim objecting to the United States' Complaint for forfeiture of the defendant vehicle under 8 U.S.C. § 1324(b). The case was submitted to this court on cross-motions for summary judgment. By order dated September 16, 1987 this court granted in part and denied in part plaintiff United States' motion for summary judgment; and denied claimant's motion for summary judgment finding genuine issues of material fact remaining for the factfinder. The court, by order dated November 2, 1987, denied claimant's motion for reconsideration of the summary judgment order, leaving the case ready for trial. After the entry of the November 2, 1987, the parties approached the court and indicated that they preferred to have the court resolve the cross-motions as a matter of law rather than through trial. The court then, by order dated November 6, 1987, vacated its denial of Claimant's motion for reconsideration. To this end the parties filed a Joint Stipulation of Facts in part agreeing "that no genuine issue of any material fact exists relative to the 8 U.S.C. § 1324(a)(2) 'in furtherance of' question and further agree that the issue of whether said defendant Chevrolet Truck was used 'in furtherance of' a violation of the aforementioned code section may be determined by the court as a matter of law." Currently before the court then is the reconsideration of the parties' cross-motions for summary judgment, this time based on the parties' Joint Stipulation of Facts.

## FACTS

On or about February 22, 1986, the Immigration and Naturalization Service ("INS"), received a report by telephone from a confidential informant that an unspecified number of undocumented (illegal) aliens were working at the El Toro Meat Market, located in the Atlanta Municipal Market at 209 Edgewood Street, Atlanta, Georgia. (Deposition of Ron Moss at 8). This informant had provided information to the INS on previous occasions that had led to the arrests of several illegal aliens. *Id.* at 18. However, this informant had never provided information that had led to the conviction of any person for violation of the Immigration and Naturalization Act. *Id.* at 18. A few days after the telephone conversation with the informant, Special Agent Ron Moss went to the Atlanta Municipal Market to try to locate the El Toro Meat Market. *Id.* at 9. He walked through the Municipal Market and found the meat market within the Atlanta Municipal Market building. *Id.* at 9.

On the next day Special Agent Moss returned to the market at about 7:00 a.m. to observe the arriving vehicles. (Deposition of Ron Moss at 9–10). He parked the car and observed for approximately one hour those persons entering the Atlanta Municipal Market from the Boaz Street entrance. *Id.* at 11. Special Agent Moss claims that although he could not see the El Toro Meat Market entrance from his car, he could tell that those persons who entered by way of the Boaz Street entrance and made an immediate left turn were going to the El Toro Meat Market. *Id.* at 11–12. During the surveillance on that

day, Special Agent Moss observed the types of vehicles that were bringing people to the meat market and he recorded the license tag numbers. *Id.* at p. 12.

One of the vehicles he observed that day was the defendant, a white chevrolet truck with a refrigerated cab, which bore Georgia License Tag Number TU 9563. *Id.* at pp. 14–15. The defendant vehicle was parked adjacent to the rear entrance of the municipal market. *Id.* at 14–15. Special Agent Moss saw two individuals who appeared to be of Latin extraction in the vehicle when it arrived at the municipal market. (Deposition of Ron Moss at 13.) According to Agent Moss the style of dress, style of hair and mannerisms of the persons in the Chevrolet Truck led him to believe that they might be illegal aliens. *Id.* at 34. According to Moss, because the municipal market was located in a predominately black neighborhood and based upon the confidential informant's report, Moss was particularly concerned with observing those persons arriving at the municipal market who appeared to be of Latin extraction. *Id.* at p. 13.

On February 27, 1986, at about 8:00 a.m., Moss and Special Agent Keith A. Roberts, while parked at the rear of El Toro Meat Market on Boaz Street, saw the above-mentioned vehicle pull up to and stop at the rear door of the loading area of the market. *Id.* at p. 20. As the passenger of the truck, who was one of the two individuals seen in the Chevrolet truck on the previous day, began to leave the truck, Special Agents Moss and Roberts approached the passenger and driver of the truck respectively, and identified themselves as INS agents. *Id.* at p. 20. The driver, Jose Jesus Macias–Coronado, and the passenger, Salvador Alvarez–Leon, sometimes referred to as Jesus Alvarez–Leon, were interviewed by Special Agents Roberts and Moss about their citizenship and what documents permitted their presence in the United States. *Id.* at pp. 20–22. The driver presented his alien registration card ("green card"), which identified him as a lawful permanent resident alien. The passenger stated that he was from Mexico and that he had no

documents which permitted him to be in the United States legally. *Id.* at pp. 20–22.

The driver and the passenger were taken into custody and driven to the INS district office in the Richard Russell Building, Atlanta, Georgia. *Id.* at 23–25. Both individuals were advised of their Miranda rights by their being read a form which contained the rights in Spanish. *Id.* at 24. Both persons signed the forms indicating that they had been given their rights and that they understood them. *Id.* at 24–25. While they were in the district office, both individuals gave sworn statements which they signed as being true. *Id.* at 24.

The passenger, Alvarez–Leon, admitted that his most recent entry into the United States was an illegal entry through a hole in the international boundary fence near San Ysidro, California on August 18, 1985. (Declaration of Ron Moss, TAB D, Affidavit for Criminal Proceedings) Alvarez–Leon stated that upon entering the United States in August of 1985, he travelled directly to the Los Angeles International Airport and bought an airline ticket to Atlanta, Georgia. *Id.* Within a month after arriving in Atlanta, Alvarez–Leon sought out Marcos Macias, Manager of the El Toro Meat Market, to get employment. *Id; See also* Deposition of Ron Moss, p. 25. Alvarez–Leon was subsequently hired by Jose Macias to work for the five El Toro restaurants, selecting meat for them. (Declaration of Ron Moss, TAB D, *See also* Deposition of Martin Macias at 24–25). Alvarez–Leon was eventually hired by Martin Macias to work in the meat market. (Deposition of Martin Macias at 27).

At the time of the February 26, 1986 seizure of the defendant truck, Jesus Jose Macias Coronado, the driver, had taken Alvarez–Leon to work at the meat market from his apartment in Chamblee, Georgia for the ten days Alvarez–Leon had been employed by the meat market. (Deposition of Jose Jesus Macias Coronado at 25).

Martin Macias, who is claimant of the defendant property, and who has testified that he is the owner of the El Toro Meat Market is the brother of Jose Jesus Macias Coronado, who was the driver of the de-

fendant vehicle at the time of the seizure. (Deposition of Jose Jesus Macias Coronado at 6). Both Martin Macias and Jose Jesus Macias Coronado are brothers of Juan Macias and Jose Macias, co-owners of the El Toro Restaurants in the Atlanta metropolitan area. (Deposition of Martin Macias at 25). Marcos Coronado, manager of the El Toro Meat Market, is the uncle of Martin Macias, Jose Jesus Macias Coronado, Juan Macias, and Jose Macias. (Deposition of Martin Macias at 11).

The following constitutes the Joint Stipulation of Facts by the parties:

## JOINT STIPULATION OF FACTS

Pursuant to the Order of Court dated November 6, 1987, the parties hereby enter into the following Joint Stipulation of Facts relative to the 8 U.S.C. Section 1324(a)(2) "in furtherance of" question:

### 1.

Jose Jesus Macias Coronado is a Mexican citizen who is a lawful permanent resident of the United States.

### 2.

Jose Jesus Macias Coronado was on February 26, 1986, an employee of El Toro Meat Market in Atlanta, Georgia.

### 3.

Salvador Alvarez–Leon is an illegal (undocumented) alien.

### 4.

Martin Macias is the owner of El Toro Meat Market, and is the registered owner of the defendant Chevrolet Truck.

### 5.

Jose Jesus Macias Coronado was authorized by Martin Macias, Claimant, to drive the defendant Chevrolet Truck.

### 6.

On February 26, 1986, Jose Jesus Macias Coronado, as the driver of the defendant Chevrolet Truck, had taken the said Salvador Alvarez–Leon from his apartment in Chambell, Georgia, to the El Toro Meat Market.

### 7.

On February 26, 1986, shortly after the arrival of the defendant Chevrolet Truck at the Atlanta Municipal Market, within which El Toro Meat Market is located, said defendant Chevrolet Truck was seized by agents of the Immigration and Naturalization Service, and at such time, Jose Jesus Macias Coronado was found to be driving said vehicle and Salvador Alvarez–Leon was a passenger in said vehicle.

### 8.

Including February 26, 1986, Jose Jesus Macias Coronado, while driving the defendant Chevrolet Truck, had picked up Salvador Alvarez–Leon from his apartment in Chamblee, Georgia and driven him to work at El Toro Meat Market for the ten days Salvador Alvarez–Leon had been employed by said meat market.

### 9.

There is no other evidence that said defendant Chevrolet Truck was used in the transportation of an alleged illegal alien.

### 10.

By entering into this Joint Stipulation of Facts, neither party is reaching any stipulation concerning knowledge of the fact that Salvador Alvarez–Leon was, in fact, an illegal alien or had entered into the United States illegally.

### 11.

The parties agree that no genuine issue of any material fact exists relative to the 8 U.S.C. Section 1324(a)(2) "in furtherance of" question and further agree that the issue of whether said defendant Chevrolet Truck was used "in furtherance of" a violation of the aforementioned Code Section may be determined by the Court as a matter of law.

## DISCUSSION

The United States asserts that it seized the defendant vehicle pursuant to 8 U.S.C. § 1324(b) (1982), which provides "(1) Any conveyance, including any vessel, vehicle, or aircraft, which is used in the commission of a violation of subsection (a) of this section shall be subject to seizure and forfeiture ..." Subsection (a) provides:

Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who ... (2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports or moves, or attempts to transport or move, within the United States by means of transportation or otherwise, in furtherance of such violation of law ... any alien ... not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony....

8 U.S.C. § 1324(a)(2) (1982).

■ Distilled into a legal test, the five elements of the crime of transporting illegal aliens are: (1) the defendant transported an alien within the United States; (2) the alien was in the United States in violation of law; (3) this was known to the defendant; (4) the defendant knew or had reasonable grounds to believe that the alien's last entry into the United States was within the last three years; and (5) defendant acted willfully in furtherance of the alien's violation of the law. *United States v. Shaddix,* 693 F.2d 1135, 1138 (5th Cir.1982).

■ The major distinction between a criminal prosecution and the civil forfeiture lies in the burden of proof. In judicial forfeiture actions brought by the United States where there is a claimant to the vehicle, the claimant has the burden of proof, provided that the United States first establishes probable cause for the institution of the action. 8 U.S.C. § 1324(b)(5) (1982); *United States v. One 1979 Lincoln Continental,* 603 F.Supp. 620, 622 (W.D. Tex.1984). To establish probable cause under 8 U.S.C. § 1324(b), the United States must make a *prima facie* showing of the five above-listed factors and that the seized vehicle was used as the means of transporting the illegal alien.

■ Based on the undisputed facts, the court finds that the government agents had probable cause to seize the truck at the time Jose Jesus Macias–Coronado and Jesus Alvarez–Leon were taken into custody. The United States has made sufficient showing on all five of the elements of a § 1324(a) offense to meet this threshold burden.

■ Claimant argues that the agents made an illegal, warrantless search and seizure of the defendant vehicle and its occupants because (1) the government has made no showing of existence requiring a warrantless seizure and (2) the agents did not have probable cause that the vehicle's occupants were illegal aliens to stop and interrogate them. This argument misses the mark. Even assuming the warrantless search and seizure of the defendant vehicle and occupants was improper, such would result only in the exclusion of the truck as evidence in the forfeiture action, not summary judgment for claimant. Whether or not the United States had probable cause when it seized the vehicle affects only the admissability of evidence obtained through the seizure. *United States v. One 1979 Mercury Cougar XR–7,* 666 F.2d 228 (5th Cir.1982); *See INS v. Lopez–Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 3484, 82 L.Ed.2d 778 (1984); *See generally One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 702, 85 S.Ct. 1246, 1251–52, 14 L.Ed.2d 170 (1965); *Jonas v. Atlanta,* 647 F.2d 580, 585 n. 6 (5th Cir.1981).

The question then is whether claimant has produced sufficient evidence on the cross-motions for summary judgment to prove that the transportation was lawful rather than unlawful under § 1324(a)(2) and whether the United States has contro-

verted this evidence. The court finds that claimant has satisfied this burden. The court, given the Joint Stipulation of Facts, can say as a matter of law that with respect to the fifth element of the offense there was no transportation "in furtherance of" a violation of law. The claimant has offered sufficient evidence on this issue which the United States has failed to refute.

The United States acknowledges that not all transportation of an illegal alien is "in furtherance of" the alien's presence. Such transportation must bear a "direct or substantial relationship" to the furtherance of the alien's unlawful presence. *United States v. One 1982 Toyota SR–5 Pick–Up,* 642 F.Supp. 335, 337 (N.D.Ill.1986); *United States v. Merkt,* 764 F.2d 266, 271–72 (5th Cir.1985).

The court in *United States v. Fierros,* 692 F.2d 1291, 1295 (9th Cir.1982) *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983) stated that "mere transportation of illegal aliens to and from the fields on the ranch or farm where they are working does not fall within a fair reading of the prohibitions of § 1324." *Id.* The "direct or substantial" test requires that courts distinguish between acts which are geared more toward surreptitious or furtive transportation of undocumented aliens which inhibits government enforcement of immigration laws and more attenuated incidents involving minimal employment-related transportation. *See United States v. One 1982 Toyota SR–5 Pick–Up,* 642 F.Supp. at 337; *Fierros,* 692 F.2d at 1295; *United States v. Moreno,* 561 F.2d 1321, 1323 (9th Cir.1977).

Summary judgment is appropriate in cases where there are no genuine issues of material fact, and the moving party is accordingly entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The parties have presented evidence demonstrating that Jesus Macias Coronado transported Alvarez–Leon to work for ten days. The parties stipulated that there is no other evidence that the defendant Chevrolet Truck was used in the transportation of an illegal alien. (Joint Stipulation ¶ 9). Claimant has produced evidence that neither he nor Jesus Macias Coronado were aware of Alvarez–Leon's illegal status. The United States has failed to produce any evidence that the transportation was "in furtherance of" his illegal presence. Without more, the evidence before the court is insufficient to establish that the alleged transportation of the illegal alien meets the "in furtherance of" requirement. *See Moreno, supra* at 1323. Thus, claimant has presented evidence sufficient to carry his burden and this court can say as a matter of law that such transportation was not "in furtherance of" Alvarez–Leon's illegal presence in the United States.

CONCLUSION

For these reasons, upon reconsideration, the court GRANTS claimant's motion for summary judgment and DENIES plaintiff's motion for summary judgment.