**UNITED STATES of America, Plaintiff,**

**v.**

**ONE 1985 FORD F–250 PICKUP, VIN: 1FTHX2518FKB39351, Defendant.**

**Civ. A. No. 88–2395.**

United States District Court, E.D. Michigan, S.D.

Oct. 3, 1988.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Marshal E. Hyman, Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

SUHRHEINRICH, District Judge.

This matter is before the Court on defendant owner Jose Navarro's motion to dismiss. The government has responded. Pursuant to Local Rule 17(*l*)(2), the Court will decide these matters without oral argument.

The instant case involves a civil *in rem* forfeiture action brought by the government against defendant vehicle for its use in transporting illegal aliens. The vehicle in question is a 1985 Ford F–250 Super Cab Pick–Up Truck.

Defendant vehicle owner, Jose Navarro, is a permanent resident alien, residing in Lockhart, Texas. He is employed by Eagle Structures, Inc., a Texas corporation, which is in the business of building self-storage structures. Defendant is a job site foreman. His duties include meeting with workers, instructing them in their particular tasks, and overseeing projects. He states by affidavit that he is not responsible for hiring or assignment of individuals at particular sites. (Affidavit of Jose Navarro ¶ 6–8.)

Defendant had been temporarily assigned by his employer to a job site at Brockton, Massachusetts since November 1987. On April 10, 1988, upon the conclusion of the project, defendant left Brockton with his wife and two children for St. Louis, Missouri. Other employees of Eagle Structure followed defendant. While en route, the group was redirected to Oak Park, Michigan. The party registered at the Murray Hill Motel on Eight Mile Road,

Detroit, Michigan on April 12, 1988. (Aff. ¶ 4, 5, 13.)

On the evening of April 13, 1988, the Border Patrol Sector of the United States Department of Justice, Immigration & Naturalization Service, received an anonymous tip that illegal aliens were staying at Murray Hill Motel. (Declaration of Mark S. Hall, ¶ 2.) Border Patrol agents proceeded to the motel. Observing two subjects leaving the motel, the agents stopped them and questioned them as to their immigration status. (Decl. ¶ 3.) One subject, Manuel Tovar Hernandez, admitted that he was a Mexican citizen in the United States illegally. The other, Tommy Wayne Arias, is a United States citizen whom the Border Patrol agents discovered had an outstanding criminal warrant in Texas. (Decl. ¶ 4, 5.) The two subjects also informed the agents that there were other illegal aliens staying at the motel and that they had three vehicles: the defendant's 1985 Van Ford Pick–Up; a 1972 blue Chevy Camaro; and a 1977 white Ford station wagon. (Decl. ¶ 5.)

With the assistance of the Detroit police, the Border Patrol agents approached room 118. Inside were Jose Nino–Navarro, his wife Sylvia (permanent resident alien); and their two children (both United States citizens). Jose advised the agents that he was a legal alien (until May 10, 1988) as he was married to a United States citizen, but that he had left his green card in Texas. He also informed the agents that the other members of his construction crew were in Rooms 221 and 222. The Border Patrol agents proceeded to these rooms, discovering and arresting six more undocumented aliens. (Decl. ¶ 6–8.) The aliens were placed into custody and taken to the Border Patrol station in Detroit. Each individual issued a sworn statement. (*See* Records of Sworn Statement of Sergio Nino–Navarro, Jose Francisco Nino–Navarro, Manuel Tovar Hernandez, Robert Hernandez–Mendez, Jose Castillo–Castillo, Antonio Nino–Navarro, Jose Guadalupe Rios–Rios.)

On October 14, 1988 the defendant vehicle was seized from Jose Navarro in Detroit, Michigan by officers of the Immigra-

tion and Naturalization Service.[1] The vehicle is currently in storage in Detroit. Defendant owner has posted an $860.00 cost bond, which gives him the right to challenge this forfeiture in federal district court. *See* 8 U.S.C. § 1324(b)(3) and 19 U.S.C. § 1608, as amended.

In the present case, both parties have introduced materials outside the pleadings. As these matters have been considered by the Court, defendant's motion to dismiss shall be treated as a motion for summary judgment and disposed of as provided in Rule 56. Fed.R.Civ.P. 12(b). On review of the papers filed by the government, the Court concludes that it has had a reasonable opportunity to present material pertinent to defendant's converted motion. The government's answer and accompanying materials include sworn statements and other documents relevant to defendant's motion. Thus, conversion of defendant's motion will not unfairly surprise the government. *See In Re G & A Books, Inc.*, 770 F.2d 288 (2d Cir.1985); *Dayco Corp. v. Goodyear Tire & Rubber*, 523 F.2d 389 (6th Cir.1975).

Under Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. *Stephens v. Norfolk and Western Railway Co.*, 792 F.2d 576, 579 (6th Cir.1986); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). If the pleadings merely create the appearance of a dispute, no genuine issue of fact exists, and summary judgment may appropriately be granted. *Watson v. Southern Railway Co.*, 420 F.Supp. 483, 485 (D.S.C.1975), *aff'd*, 542 F.2d 1170 (4th Cir.1976). Summary judgment may properly be granted when there is merely a colorable dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). However, when determining a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Watkins v. Northwestern Ohio Tractor Pullers Association*, 630 F.2d 1155, 1158 (6th Cir.1980). Evidence, together with all reasonable inferences to be drawn therefrom, must be construed in the non-moving party's favor. *Adickes v. Kress & Co.*, 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). These standards shall be applied to the instant motion.

 Forfeiture under 8 U.S.C. § 1324(b) (Supp. IV) requires the government to show probable cause that the conveyance seized was used in the commission of a violation of § 1324(a).[2] 8 U.S.C. § 1324(b)(1), (b)(5). *United States v. One 1982 Chevrolet Crew–Cab Truck*, 810 F.2d 178, 181 (8th Cir.1987). The government must therefore make a *prima facie* showing that: (1) the defendant knows that the alien he transports has entered the United States in violation of the law; and (2) the defendant transports the alien in order to further the violation. § 1324(a)(1)(B).[3]

---

**1.** The other two vehicles were also seized. Since no claim was filed or cost bond posted on these vehicles, they were administratively forfeited. (United States' Answer to Jose Navarro's Motion to Dismiss with Brief, at 8.)

**2.** 8 U.S.C. § 1324(b) provides in pertinent part:
(1) Any conveyance, including any vessel, vehicle, or aircraft, which has been or is being used in the commission of a violation of subsection (a) shall be seized and subject to forfeiture. . . .

**3.** Section § 1324(a)(1)(B), as amended, provides:
(1) Any person who—
 (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; shall be fined in accordance with Title 18, imprisoned not more than five years, or both, for each alien in respect to whom any violation of this subsection occurs.
This section was amended on November 6, 1986. Former section 1324(a)(2) is now Section 1324(a)(1)(B). As amended, the section has added a "reckless disregard" of an illegal alien's presence to the knowledge requirement and deleted the three year limitation. *See United States v. Morales–Rosales*, 838 F.2d 1359, 1361 and n. 2 (5th Cir.1988); Act of November 6, 1986, P.L. No. 99–603, 1986 *U.S.Code Congr. & Admin.News*, (100 Stat.) 5649, 5669–5670.

*United States v. Morales–Rosales,* 838 F.2d 1359, 1361 (5th Cir.1988). After the government establishes probable cause for institution of the action, the burden shifts to the claimant to rebut the government's *prima facie* case. 8 U.S.C. § 1324(b)(5); *One 1982 Chevrolet Crew–Cab Truck,* 810 F.2d at 181; *United States v. One 1982 Toyota SR5 Pick–Up,* 642 F.Supp. 335, 337 (N.D.Ill.1986) (stating that the major distinction between a criminal prosecution and civil forfeiture brought by the United States is in the burden of proof).

■ This Court, after reviewing the government's brief and affidavits, finds that the United States has met its burden of establishing probable cause that a violation of § 1324(a) involving the seized truck occurred. Jose Navarro does not deny knowledge of the aliens' illegal status, and two of the aliens have attested to his awareness. (*See* records of sworn statements of Manuel Tovar Hernandez and Robert Hernandez–Mendez.) The only real issue then, is whether defendant's actions furthered the illegal presence. Although defendant states in his affidavit that defendant vehicle was not used for any illegal purpose; two of the aliens, Sergio Nino–Navarro and Jose Castillo–Castillo, stated under oath that they have ridden in defendant's vehicle. (Record of Sworn Statement of Sergio Nino–Navarro and Jose Castillo–Castillo.) Mr. Castillo specifically stated that he "rode in that [Jose Navarro's pick-up truck] and Jose was driving it, we all rode in these vehicles, and switched around." Thus, a genuine doubt exists as to whether the defendant vehicle was in fact used to transport illegal aliens. Summary judgment is therefore inappropriate.

■ Mr. Navarro also argues that even if one assumes that he did transport aliens in defendant vehicle, this did not further their illegal presence in the United States within the meaning of 8 U.S.C. § 1324(a)(1)(B). Defendant relies on *United States v. One 1984 Ford Van,* 826 F.2d

918 (9th Cir.1987), in support. There the Ninth Circuit held that transportation of illegal aliens from one job site to another was part of the ordinary and required course of employment and did not further the illegal presence of undocumented aliens in the United States. The court stated that its decision was expressly controlled by its earlier holding in *United States v. Moreno,* 561 F.2d 1321 (9th Cir.1977). *Moreno* dealt with a foreman who was required to transport illegal aliens in the course of his employment. Finding no violation of the transportation statute, the court stated that "his transportation of illegal aliens was only incidentally connected to the furtherance of the violation of the law, if at all." *Id.* at 1322. It further held that "there must be a direct or substantial relationship between [the] transportation and its furtherance of the alien's presence in the United States." *Id.* at 1323.[4] *See also United States v. Fierros,* 692 F.2d 1291 (9th Cir.1982), *cert. denied,* 462 U.S. 1120, 103 S.Ct. 3090, 77 L.Ed.2d 1350 (1983).

The "direct or substantial" test requires a court to distinguish between acts whose underlying goal is surreptitious transportation of undocumented aliens and more attenuated occurrences involving minimal employment-related transportation. *See Fierros,* 692 F.2d at 1295; *Moreno,* 561 F.2d at 1322; *United States v. One 1984 Chevrolet Truck,* 682 F.Supp. 1221 at 1226 (N.D.Ga.1988). The government has alleged facts indicating that defendant's acts furthered the alien's presence in the United States. While it is not alleged that Mr. Navarro assisted in the aliens' illegal entry into this country, the sworn statements of the illegal aliens raise an inference that Jose Navarro may have played a significant role in arranging and providing for their employment. Specifically, the sworn statements corroborate that Jose made all the work arrangements, paid for their lodging, and significantly, had three of his

---

4. The *Moreno* court was concerned that a broader interpretation would nullify the qualification. "To do this would potentially have tragic consequences for many American citizens who come into daily contact with undocumented aliens

and who, with no evil or criminal intent, intermingle with them socially or otherwise." 561 F.2d at 1323. The proofs offered by the government in the instant case suggest that such fear may be inapposite here.

brothers under his employ. One of the forfeited vehicles, the Chevy Camaro, was registered in the name of Navarro's wife Silvia, even though Manuel Tovar–Hernandez claims to have paid for it. These allegations, if true, would place Mr. Navarro's conduct within the prohibitions of the criminal statute.

In *United States v. Shaddix*, 693 F.2d 1135 (5th Cir.1982), the Fifth Circuit found an employee's offer of employment and his voluntary transportation of aliens known to be illegally present in the United States to have sufficiently "furthered [the aliens'] illegal presence in this country to constitute a violation of § 1324(a)(2)." 693 F.2d at 1135. *See also One 1982 Chevrolet Crew–Cab Truck*, 810 F.2d at 182. Although Jose Navarro was not the employer of the illegal aliens, the facts indicate that he may be more than a third-party employee only incidentally connected to the violation. *See One 1982 Chevrolet Crew–Cab Truck*, 810 F.2d at 182.

Finally, defendant brings a separate motion for production of documents under Rule 34. The government in its response has indicated to the Court that all materials requested by Mr. Navarro have already been provided to Mr. Navarro's attorney. The Court will therefore order the government to provide said documents to the extent it has not yet done so.

For all the foregoing reasons,

IT IS HEREBY ORDERED that defendant-owner Jose Navarro's motion to dismiss is DENIED.

IT IS FURTHER ORDERED that defendant-owner Jose Navarro's request for production of documents under Rule 34 is GRANTED to the extent the government has not already provided the requested materials.