UNITED STATES of America, Plaintiff,

v.

ONE 1985 FORD F–250 PICKUP, VIN: 1FTHX2518FKB39351, Defendant.

Civ. A. No. 88–2395.

United States District Court,
E.D. Michigan, S.D.

Nov. 25, 1988.

Ross I. MacKenzie, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Marshal E. Hyman, Birmingham, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

SUHRHEINRICH, District Judge.

This matter is before the Court on the United States' motion for summary judgment. Defendant vehicle owner, Jose Navarro, has responded. Pursuant to Local Rule 17(*l*)(2), this matter will be decided without oral argument.

The government brings the instant civil *in rem* forfeiture action against defendant vehicle for its alleged use in the transportation of illegal aliens.

The vehicle at issue is a 1985 Ford F–250 Super Cab Pick-up Truck. On October 3, 1988 the Court denied defendant's motion to dismiss. *United States v. One 1985 Ford F–250 Pick-up VIN: 1FTHX2518FKB39351,* 702 F.Supp. 1304 (E.D.Mich.1988). The relevant facts, as set forth originally in the earlier opinion, follow.

Defendant vehicle owner, Jose Navarro, is a permanent resident alien, residing in Lockhart, Texas. He is employed by Eagle Structures, Inc., a Texas corporation, which is in the business of building self-storage structures. Defendant is a job site foreman. His duties include meeting with workers, instructing them in their particular tasks, and overseeing projects. He states by affidavit that he is not responsible for hiring or assignment of individuals at particular sites. (Affidavit of Jose Navarro ¶ 6–8.)

Defendant had been temporarily assigned by his employer to a job site at Brockton, Massachusetts since November 1987. On April 10, 1988, upon the conclusion of the project, defendant left Brockton with his wife and two children for St. Louis, Missouri. Other employees of Eagle Structure followed defendant. While en route, the group was redirected to Oak Park, Michigan. The party registered at the Murray Hill Motel on Eight Mile Road, Detroit, Michigan on April 12, 1988. (Aff. ¶ 4, 5, 13.)

On the evening of April 13, 1988, the Border Patrol Sector of the United States Department of Justice, Immigration & Naturalization Service, received an anonymous tip that illegal aliens were staying at Murray Hill Motel. (Declaration of Mark S. Hall, ¶ 2.) Border Patrol agents proceeded to the motel. Observing two subjects leaving the motel, the agents stopped them and questioned them as to their immigration status. (Decl. ¶ 3.) One subject, Manuel

Tovar Hernandez, admitted that he was a Mexican citizen in the United States illegally. The other, Tommy Wayne Arias, is a United States citizen whom the Border Patrol agents discovered had an outstanding criminal warrant in Texas. (Decl. ¶ 4, 5.) The two subjects also informed the agents that there were other illegal aliens staying at the motel and that they had three vehicles: the defendant's 1985 Van Ford Pick–Up; a 1972 blue Chevy Camaro; and a 1977 white Ford station wagon. (Decl. ¶ 5.)

With the assistance of the Detroit police, the Border Patrol agents approached room 118. Inside were Jose Nino–Navarro, his wife Sylvia (permanent resident alien); and their two children (both United States citizens). Jose advised the agents that he was a legal alien (until May 10, 1988) as he was married to a United States citizen, but that he had left his green card in Texas. He also informed the agents that the other members of his construction crew were in Rooms 221 and 222. The Border Patrol agents proceeded to these rooms, discovering and arresting six more undocumented aliens. (Decl. ¶ 6–8.) The aliens were placed into custody and taken to the Border Patrol station in Detroit. Each individual issued a sworn statement. (*See* Records of Sworn Statement of Sergio Nino–Navarro, Jose Francisco Nino–Navarro, Manuel Tovar Hernandez, Robert Hernandez–Mendez, Jose Castillo–Castillo, Antonio Nino–Navarro, Jose Guadalupe Rios–Rios.)

On October 14, 1988 the defendant vehicle was seized from Jose Navarro in Detroit, Michigan by officers of the Immigration and Naturalization Service. The vehicle is currently in storage in Detroit. Defendant owner has posted an $860.00 cost bond, which gives him the right to challenge this forfeiture in federal district court. *See* 8 U.S.C. § 1324(b)(3) and 19 U.S.C. 1608, as amended.

Under Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. *Stephens v. Norfolk and Western Railway Co.,* 792

F.2d 576, 579 (6th Cir.1986); *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc.,* 668 F.2d 905, 908 (6th Cir.1982). If the pleadings merely create the appearance of a dispute, no genuine issue of fact exists, and summary judgment may appropriately be granted. *Watson v. Southern Railway Co.,* 420 F.Supp. 483, 485 (D.S.C.1975), *aff'd,* 542 F.2d 1170 (4th Cir.1976). Summary judgment may properly be granted when there is merely a colorable dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202, 211 (1986). However, when determining a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Watkins v. Northwestern Ohio Tractor Pullers Association,* 630 F.2d 1155, 1158 (6th Cir.1980). Evidence, together with all reasonable inferences to be drawn therefrom, must be construed in the nonmoving party's favor. *Adickes v. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). These standards shall be applied to the instant motion.

Forfeiture under 8 U.S.C. § 1324(b) (1986) requires the government to show probable cause that the conveyance seized was used in the commission of a violation of § 1324(a). 8 U.S.C. § 1324(b)(1), (b)(5). *United States v. One 1982 Chevrolet Crew–Cab Truck,* 810 F.2d 178, 181 (8th Cir.1987). The government must therefore make a *prima facie* showing that: (1) the defendant knows that the alien he transports has entered the United States in violation of the law; and (2) the defendant transports the alien in order to further the violation. § 1324(a)(1)(B). *United States v. Morales–Rosales,* 838 F.2d 1359, 1361 (5th Cir.1988). After the government establishes probable cause for institution of the action, the burden shifts to the claimant to rebut the government's *prima facie* case. 8 U.S.C. § 1324(b)(5); *One 1982 Chevrolet Crew–Cab Truck,* 810 F.2d at 181; *United States v. One 1982 Toyota SR5 Pick–Up,* 642 F.Supp. 335, 337 (N.D.Ill.1986) (stating that the major distinction between a criminal prosecution and civil forfeiture brought

by the United States is in the burden of proof).

In the instant case, the Court held in its memorandum opinion and order of October 3, 1988 that the government had met its burden of establishing probable cause that a violation of § 1324(a) involving the defendant vehicle had occurred and denied defendant owner's motion to dismiss. *One 1985 Ford, supra* at 1307. The government now argues that defendant has failed to shoulder its burden of rebutting the government's *prima facie* case, 8 U.S.C. § 1324(b)(5), in that it has produced no countervailing evidence presenting a genuine issue of material fact.

In finding probable cause, the Court relied in part upon the sworn statements of the illegal aliens: (1) Manuel Tovar Hernandez and Robert Hernandez–Mendez's statements that Jose Navarro was aware of their illegal status; (2) Sergio Nino–Navarro's and Jose Castillo–Castillo's statements that they have ridden in defendant's vehicle; and (3) Jose Castillo–Castillo's statement that he and all the others rode in Jose Navarro's pick-up truck and in all the vehicles.

In addition, the government has introduced the deposition testimony of August 4, 1988 of Jose Navarro in the present motion to support its *prima facie* case. Navarro admitted during the course of the deposition that he permitted his brother Sergio to drive the truck one time on a trip to a job site in Iowa because he was tired. Deposition Transcript ("Dep.Tr.") of Jose Nino–Navarro at 37–38. Although Navarro denied that he knew any of this crew members were illegal aliens (Dep.Tr. 25), he also stated that he never bothered to inquire as to their status, including his own brothers Sergio and Antonio (Dep.Tr. 30–31). Further, Navarro admitted that his duties consisted of more than a mere job site foreman. He admitted to renting rooms for his crew (Dep.Tr. 27–29); to distributing money to the crew members when it was wired to the job site (Dep.Tr. 32, 37, 68); and that he has authority to hire people locally at job sites with permission from Eagle Structures (Dep.Tr. 67).

Finally, Navarro further admitted that he procured a job at Eagle Structures for his brother Francisco; and conceded that he knew some of the other crew members from his hometown in Monterey, Mexico before they came to the United States (Dep.Tr. 25).

The Supreme Court has generally upheld the constitutionality of forfeiture statutes against due process challenges, subject to two exceptions. *Calero–Toledo v. Pearson Yacht Leasing Company*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). An owner of the property subject to seizure may have a constitutional defense if (1) the subject property was stolen or wrongfully in possession of another; or (2) if the claimant was not involved in and was unaware of the wrongful activity and had "done all that reasonably could be expected to present the proscribed use of his property." 416 U.S. at 689, 94 S.Ct. at 2094. *See also United States v. One 1984 Mercedes Benz Model No. 380SE*, 836 F.2d 268, 269–70 (6th Cir.1988). *United States v. One 1983 Pontiac Gran Prix*, 604 F.Supp. 893, 896–97 (E.D.Mich.1985).

A review of Navarro's pleadings clearly reveals that he has failed to meet the requirements of the judicially created exceptions to forfeiture. Jose Navarro has not pled wrongful possession or that he made any affirmative efforts to prevent the illegal use of his pickup truck and therefore may not avail himself of the innocent owner defense. *Calero Toledo*, 416 U.S. at 690, 94 S.Ct. at 2095. Thus, the government is entitled to summary judgment on this basis.

Moreover, even if defendant had properly pled a defense, his claim would still fail since he has failed to present facts which rebut the government's *prima facie* case and create a genuine issue as to a material fact. A conclusory allegation of noninvolvement or lack of knowledge by defendant owner is insufficient. The claimant must show some affirmative action on his part to present the proscribed use of the property. Absent such a showing, summary judgment in favor of the United States is appropriate. *United States v.*

*One 1982 Chevrolet Crew Cab Truck,* 810 F.2d 178, 183–84 (8th Cir.1987); *One 1983 Pontiac Gran Prix,* 604 F.Supp. 987. A review of defendant's pleadings reveals that Navarro has failed to make such a showing. In fact, Navarro's deliberate failure to inquire as to the status of the crew members, some of whom he knew to have recently arrived from Mexico, clearly indicates a lack of any effort to prevent the proscribed use of his vehicle. Further, the sworn statements of the illegal aliens indicate that Navarro had actual knowledge of their illegal status and still permitted them to use his vehicle. Navarro has presented no evidence to refute those statements.

■ Navarro's argument that the government must prove that the vehicle was used or attempted to be used to smuggle illegal aliens *into* the United States pursuant to 8 U.S.C. § 1324(a)(1) and (4) is perplexing in light of the Court's opinion of October 3, 1988. That opinion makes clear that the vehicle in question is subject to forfeiture under 8 U.S.C. § 1324(b) because of its use in violation of 8 U.S.C. § 1324(a)(1)(B);[1] namely, in the transportation of illegal aliens *within* the United States. Contrary to Navarro's assertion, the government does not have to demonstrate that the use of defendant vehicle was in furtherance of the illegal aliens' "entry" into the United States since that is not at issue here.

Moreover, Navarro's reference to the employer sanctions contained in the Immigration Reform and Control Act of 1986 is irrelevant. The government did not allege that Navarro, as job foreman, had a statutory duty to inquire into his co-workers' legal status. Rather, the government's argument is that Navarro would have to plead and prove that he was unaware of his crew members' illegal status; and further that he was not only not involved in their alleged activities, but also that he took every reasonable precaution to prevent their illegal use of his property. This defendant Navarro has not done.

■ Finally, Navarro's continued reliance of Ninth Circuit cases holding that mere transportation of an illegal alien to a job site is not a criminal violation warranting a forfeiture is inappropriate given the Court's holding on October 3, 1988. In that opinion, the Court found that the government had alleged sufficient facts to raise an inference that Jose Navarro may have played a significant role in arranging for the aliens' employment, thereby furthering the continued presence in the United States.

In light of the government's evidence, Navarro was not entitled to "rest upon the mere allegations ... of his pleading, but ... by affidavit ... must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Due to Navarro's failure to plead a forfeiture exception and to present specific factual evidence that might have raised a triable issue with respect to the knowledge and affirmative action elements of the government's *prima facie* case, the Court sees no bar to summary judgment.

Accordingly,

IT IS HEREBY ORDERED that the United States' motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that the defendant vehicle is forfeited to the United States Government.

---

1. Section § 1324(a)(1)(B), as amended, provides:

    (1) Any person who—

      (B) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law; shall be fined in accordance with Title 18, imprisoned not more than five years, or both, for each alien in respect to whom any violation of this subsection occurs.